## JOHN FROST *versus* GEORGE HULL.

Swine unlawfully at large upon the highways in any town, cannot be legally seized and impounded on the Sabbath, and a hogreeve who siezes and impounds swine on that day is a trespasser.

THIS was an action of trespass against the defendant for taking and converting to his own use ten swine of the plaintiff.

The cause was tried here upon the general issue at February term, 1827, when it appeared in evidence that the swine mentioned in the declaration were going at

Frost
*v.*
Hull.

large on the 30th May 1824, that day being Sunday, with the knowledge and assent of the plaintiff, the same being neither yoked, nor ringed ; that the defendant being a hogreeve legally appointed and qualified in the town of Durham, seized the said swine being so at large on the said day and impounded them.

A verdict was taken by consent, subject to the opinion of the court upon the question whether the defendant could lawfully exercise the powers of a hogreeve on the Sabbath day.

*Mitchell* and *Mason*, for the plaintiff.

*Richardson* and *Woodbury*, for the defendant.

*Woodbury* for the defendant contended that the seizure and impounding of the swine on the Sabbath was not illegal. It was not so at common law. Before the canon of the church in the year 517, both civil and criminal process might issue, and the cause be tried, on the sabbath. Burr. 1598, *Swan* v. *Broome*. Some time afterwards the sabbath became in England *dies non Juridicus*, for trials and returns ; but until the reign of Charles II. process might be served, and any ministerial act done, on that day. 9 Coke 66, *McKally's case* ; Burr. 1601 ; Cro. James, 496.

The statute of the 29 Car. II. prohibits the service of civil process, but excepts all criminal proceedings connected with the public peace. So is the statute in New York and in Massachusetts. 12 Johns. 179 ; 20 ditto 140 ; 3 East. 155 ; 13 Mass. Rep. 324, *Pierce* v. *Atwood*.

Our statute says nothing as to civil or criminal process ; but merely prohibits any person " to do or exercise any labour business, or work of their secular calling, works of necessity and mercy excepted."

If the terms " labour, business or work of their secular calling" were intended to embrace only such acts as could not be lawfully done on the sabbath at common law or under the English statutes before the statute of Car. II— then this seizure and impounding, being a mere ministe-

Frost
*v.*
Hull.

rial act, were clearly legal.   But if they were intended to embrace other acts of every description, which are not within the exception, then it must be seen to what extent the exception goes.

The term "secular" means nothing more than *ordinary* or *worldly*, in other statutes ; for it is said in 4 Bl. Com. 43, that secular business is prohibited by the statute of Car. II.   The mere prohibition is then as broad there as it is here.

The exception of "works of necessity and mercy" does not mean only works of mere physical necessity, or technically, of mercy ; but works usually done, and under all the circumstances morally fit to be done, on the sabbath.   6 Mass. Rep. 76, *Commonwealth* v. *Knox* ; 13 ditto 324.   The mail of the United States may be legally transported, funeral rites may be performed, marriages may be solemnized, and process in criminal cases may be executed, on the sabbath, because these are works of necessity fit to be done on the sabbath within the meaning of the exception.

Our statute which prohibits swine from being at large unyoked and unrung was made to guard the public safety and enforce the public police, and is general, empowering hogreeves to sieze and impound them at all times when the owner is unknown.   The object of the statute was to secure the property of individuals lying contiguous to highways from depredation, and the individuals themselves from disturbance by animals in this condition. The seizure and impounding is for the security of all and not of any particular individual, and is as much a matter of public concern and utility on the sabbath as the arrest of a criminal.

All the cases of acts, which if done upon the sabbath have been held to be void, are those of a mere private nature—for redress of private wrongs, or for individual profit.   Such is the case 13 Mass. Rep. 324, and there the tythingman had authority expressly without warrant

to make the arrest, and the warrant was an useless work.

But if the proceeding of this defendant cannot be justified on this ground, we contend that a distress of cattle or swine damage feasant or of swine at large in the highway is an exception to the prohibition of civil proceedings on the sabbath, because the distress is a preventative measure under imminent danger to property. It is not like a writ which issues from the office of the clerk of the court and requires his office to be open and an officer to execute it. It is said in scripture if an ox fall into a pit he may be lawfully taken out on the sabbath. By analogy the protection and rescue of corn or grass exposed to destruction on the sabbath would seem to be justifiable.

Here all the property in Durham contiguous to the public highway became exposed on the sabbath by the wrongful act of the plaintiff in turning his swine at large on that day, and the seizure and impounding were safe and proper measures to guard against the threatened injury. The proceeding was conducted with decency, and was adopted, not in a case where swine were accidentally at large without the knowledge of the owner, but where the owner turned them at large to enjoy what he is said to have called " the hog's holiday."

It does not follow that because an act is illegal, it is therefore void. There are many acts, which although not lawful, are yet valid. 1 N. H. Rep. 266, *Jones* v. *Gibson ;* 2 ditto 202, *Johnson* v. *Wilson.*

On this very subject, it has been holden that a contract made on the sabbath is valid. 10 Mass. Rep. 312 ; 1 Cowen 76, note. And such is the law every where except in Connecticut.

The opinion of the court was delivered by RICHARDSON, C. J.

The question to be decided is, whether the circumstance in this case, that the seizure was upon the sabbath, has made the defendant a trespasser ?

We shall in the first place consider whether the seizure on that day was legal. This depends upon the statute of December 24, 1799, entitled "an act for the better observation of the Lord's day," &c. which enacts "that no tradesman, artificer, or any other person whatsoever, shall do or exercise any labor, business or work of their secular callings, works of necessity and mercy only excepted, nor use any game, play, or recreation, on the first day of the week, commonly called the Lord's day, or any part thereof, upon pain that every person so offending shall forfeit a sum not exceeding six dollars nor less than one."

The provincial act of the 12 William III. enacted "that no tradesman, artificer, or other person whatsoever, shall upon the land or water do or exercise any labour, business, or work of their ordinary calling" on the Lord's day. This seems to have been a copy of the English statute of the 29 Car. II. upon which it has been decided that a sale of goods made on Sunday, which is not made in the exercise of the ordinary calling of the vendor is not illegal. 1 Taunt. 131, *Drury* v. *Defontaine.*

It will be perceived, that our present statute omits the word " *ordinary*," and substitutes the word " *secular*," so that any work, labour, or business relating to secular concerns, works of necessity and mercy excepted, seem to be within the prohibitions of the statute. And it is believed that the statute has been so understood always by the community in general, and we cannot doubt that this was the intention of the legislature. We are inclined to think that if our forefathers had supposed that the word " *ordinary*" in the statute of 29 Car. II. had the force and effect which it has been decided in England to have, they would not have copied it into our provincial act.

But that the seizure of swine, found at large in violation of law, by a hogreeve, is work or business belonging to a secular calling within the meaning of the statute, is

quite too clear to admit a doubt. And we think it equally clear, that it is not a work of necessity or mercy. We have, therefore, no hesitation in pronouncing the seizure illegal.

It remains only to enquire whether such illegal seizure of the swine has made the defendant a trespasser.

In *Delamater* v. *Miller*, 1 Cowen, 75, it was held that a demand made on Sunday was void.

In *Pierce* v. *Atwood*, 13 Mass. Rep. 324, it was decided that an arrest made on the Lord's day was illegal, and the officer making it a trespasser.

In *The King* v. *Myers*, 1 D. & E. 265, one who had been illegally arrested upon Sunday was discharged out of custody.

In *Fennell* v. *Ridler*, 5 B. & C. 406, it was held that a horse dealer could not maintain an action upon a contract for the sale and warranty of a horse made by him on Sunday.

And it has long been settled that no judicial act can be done on Sunday. 3 Burr. 1595, *Swann* v. *Broome* ; 9 Coke 66 ; 1 Bl. Rep. 526 ; Cro. Jac. 496.

And we are clearly of opinion that the act of seizure, in this case, being a violation of law, the defendant must be considered as a trespasser, and that the plaintiff is entitled to judgment.