Neal and others *vs.* Crew.

No. 19.—JOHN NEAL and others, plaintiffs in error, *vs.* WILLIAM F. CREW, defendant in error.

[1.] Sunday is not to be counted as one of the *four days* within which appeals are allowed to be entered.

Motion to enter an appeal, in Henry Superior Court. Decided by Judge STARK. June Term, 1852.

At October Term of the Superior Court of Henry County, 1851, the case of Wm. F. Crew *vs.* John Neal and others, was tried, and a verdict found for complainants. The Court adjourned on Friday, the 17th of the month. Between the hours of 12 o'clock on the night of the 21st, (Tuesday,) and one o'clock, of the morning of the 22d of the same month, the Clerk was aroused by a messenger, sent by defendant's solicitor, who presented the affidavit of one of defendants, to procure an appeal, as a pauper. It appeared that the messenger had some difficulty in finding the Clerk, and lost some time in the search.

Defendants' counsel insisted that the appeal should be entered:

1st. Because it was made and sent to the Clerk, before the expiration of four days.

2d. Because *Sunday* should not be counted in estimating the four days allowed by the Statute.

The Court refused the motion, and the decision is assigned as error.

EZZARD & MOORE, for plaintiffs in error.

DOYAL & NOLAN, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] By the Judiciary Act of 1799, it is provided that in case either party shall be dissatisfied with the verdict of the Jury,

either party may, within four days after the adjournment of the Court in which such verdict was obtained, enter an appeal in the Clerk's office, of such Court, (as matter of right,) provided the person so appealing, except executors and administrators, shall, previous to obtaining such appeal, pay all costs which may have arisen on the former trial, and give security for the eventual condemnation money.  *Prince,* 426.

Now the question made by this record, is—and it is one of vast practical importance—whether the *Sabbath* is to be reckoned as one of the four days allowed for entering appeals.

It would be out of place, perhaps, to notice with what esteem and veneration the Sabbath was regarded by Kings, prophets and righteous men of old; by ancient Christians, who lived nearest the Apostles' time, and by the Fathers of the Church, who followed them.

Constantine the Great, commanded by an edict, the whole Roman Empire, to observe the Lord's Day, in memory of those things which were done by the common Saviour of all men, observing at the same time, that he counted it "the chief and best of days."

In England, we have left on record, many ancient laws, commencing with King Ina in A. D. 688, and coming down to Canute, about the year 1026, prohibiting, under suitable penalties, all worldly work on this day, and prescribing the times when it should begin and terminate.

In 1762, our own pious ancestors passed an Act for keeping holy the Lord's Day, commonly called Sunday. The preamble recites, that whereas, there is nothing more acceptable to God, than the true and sincere worship of Him, according to His Holy will; and that the keeping holy the Lord's Day, is a principal part of the true service of God, which was too much neglected by many in the province : Be it enacted, &c.

The first section, compelling all persons to attend worship, being repugnant to the Constitution, is repealed by it.   And I would here take occasion to say, that this provision of the Constitution, has my hearty approval.   For while I would protect the Sabbath day from profanation, by prohibiting horse-racing

Neal and others *vs.* Crew.

and all such public and demoralizing sports and pastimes, together with all secular callings of a wordly character, I would not intermeddle with the natural and indispensable right of all men, to worship God, or not, according to the dictates of their own consciences. The State should compel no one to erect, attend or support a place of public worship, or maintain any ministry against his consent.

By the second section of this Act, no person whatever shall do or exercise any worldly labor, business, or work of their ordinary callings, upon the Lord's day, or any part thereof, (works of necessity and charity only, excepted) under the penalty of ten shillings. And by subsequent sections, civil process is forbidden to be executed on that day. *Crawford & Marbury's Digest,* 410. *Prince,* 486, '7, '8. *New Dig.* 853.

By a subsequent Statute, passed in 1834, attachments and bail process are allowed to be issued and served on the Sabbath, provided the creditor, in addition to the usual oath, will swear that he apprehends the loss of his debt, or some part thereof, unless said process shall issue on the Sabbath-day. *Prince,* 474.

The Provincial Act is much more comprehensive than the Act of *II. Charles,* which prohibits secular affairs on Sunday, which itself is considered but an affirmance of the Common Law. *Chitty's Col. Stat.* 1039. Edward, called the Confessor, made a constitution forbidding the holding of Courts on all *Sabbath* days, after the 9th hour, and the whole day following, until *Monday,* and this was confirmed by *William the Conqueror ;* and thus, says Lord *Mansfield,* became part of the Common Law of England. Hence the *Lord's Days, dies dominici* became *dies non juridici. Swan vs. Broome,* 3 *Burrow,* 1595. And this was the ancient law of England, Lord *Coke* tells us, and extended not only to legal proceedings but to contracts. 2 *Inst.* 264.

Under the Act of *Charles,* it has been held, that one who, in the exercise of his ordinary calling, purchased a horse on Sunday, could not maintain an action on the contract of warranty. *Fennel vs. Ridler,* 5 *B. and C.* 406. Mr. Justice *Bailey* said, on

delivering his opinion in this case: "This Statute is entitled to such a construction, as will promote the ends for which it is passed; and it applies to private as well as to public conduct."

In the case of *Smith vs. Shannon*, (4. *Bing*. 84,) it was decided that an action for breach of contract, in not accepting merchandize sold on Sunday, could not be maintained. *Best, C. J.* said, "unless it be permitted to a party to profit by a contract, in defiance of the laws of the country, the plaintiff cannot recover."

So, service of process on Sunday, is so absolutely void, that it cannot be made good by any waiver of the objection. *Lenridge vs. Plaiston*, 2 *H. Black. R.* 29. And judgment for want of a plea cannot be signed on Sunday. 17 *E. C. L. Rep.* 367; *ib. XX.* 67. It is not counted one of the four days for the justification of bail; nor in a rule for judgment after verdict; nor one of the four days, during which a *ca. sa.* or *scire facias* to fix bail must lie in the office. *Tidd's Pr.* 260, 903. 1 *B. & A.* 528. 6 *M. & S.* 133.

And yet Sunday, unless it be the last, is counted one of the days in a notice *to plead*, and one of the four days in a rule *to plead*. 2 *Jack.* 624. 11 *East.* 232. *Mr. Chitty* makes this singular comment upon this exception to the general rule: "*Special pleaders are supposed to be less observant of the Sabbath than the rest of mankind.*" 3 *vol. Gen. Pr. p.* 105, (*note.*)

As a key to this opinion, I shall be pardoned, perhaps, notwithstanding the gravity of the subject I am treating, for introducing in this place, an anecdote from Wynne's *Eunomus,* one of the most attractive and instructive books that has been published concerning the laws of England.

St. Evona, a famous lawyer of the olden time, was piqued for the honor of the Robe, that his profession should have no Saint to patronize it. The physicians had St. Luke; the champions St. George; music and painting, and every other employment had its tutelar Saint. To Rome the good old man went, and requested the Pope to give the lawyers of Britain a patron Saint. His Holiness could recollect none that was not already disposed of. The dilemma was distressing; to own his incapacity would never do; to palm off upon the veteran lawyer, a Saint

that had already been appropriated, would be equally futile; he proposed therefore, to St. Evona, to go round the Church of St. John de Lateran blindfold; and after he had said so many Ave Maria's, the first Saint he laid hold of should be his patron. The task was willingly undertaken; when he had finished his Ave Maria's, he stopped short and embraced the first image he came to, crying out with joy—"This is our Saint, let this be our patron." But when the bandage was taken from his eyes, what was his astonishment to find that though he had stopped at St. Michael's altar, he was hugging to his bosom, not St. Michael, *but the figure under St. Michael's feet!* the same with which the archangel contended, when disputing about the body of Moses. *Jude,* 9.

The story says that Evona died soon after, of a broken heart.

Whether he had authority to act for his brethren, and whether he should be deemed to have accepted of the patron, may still be considered open questions, notwithstanding the fling of *Mr. Chitty.*

Statutes similar to ours, have been passed in almost every State of the Union; and unless Massachusetts be an exception, have received the same construction, as is indicated by the authorities heretofore quoted. *Frost vs. Hill,* 4 *N. H. Rep.* 157. *Lyon vs. Strong,* 6 *Vermont,* 219. *Wight vs. Greer,* 1 *Root,* 474. *Fox vs. Abel,* 2 *Conn. Rep.* 584. *Delamike vs. Miller,* 1 *Cow.* 75. *King vs. Elliott,* 8 *Cow.* 27. *Northrup vs. Foot,* 14 *Wend.* 248. *Keefsner vs. Keefer,* 6 *Watt's,* 231.

So far has this doctrine been carried, that in some of the States it has been recently held, that marriage contracts *made* and *consummated* on Sunday are void, it being considered a *worldly work,* and one neither of *necessity* nor *mercy.*

In all cases where the Statute prohibits the doing of an act, as it respects the public or an individual, things done relative to that subject, in contravention of it, will be void; and no distinction is made between what is *malum in se,* or *malum prohibitum.* 5 *E. C. L. R.* 257. 7 *Ib.* 122

If a Statute forbids a thing to be done on the Sabbath, the

act will be void.   11 *E. C. L. R.* 261.   *Ibid*, 12, 253.   *Ibid*, 13, 351.   2 *Conn. R.* 541.   *Swift's Revised Digest, top p.* 219.

In view of these authorities, and of the fact that our Act is much broader than the English Statute, extending to " *every person whatsoever,*" and embracing every species of "*worldly business,*" whether it be in the exercise of a person's *ordinary calling* or not, we may, I think, assume, unhesitatingly, that an appeal entered on the Sabbath, in this State, would be void.

The question then recurs, did the Legislature, in allowing *four days* for entering appeals, intend to count as one of them a day on which the act to be performed could not lawfully be done?

We concede, that as a general rule, the doctrine that *Sunday* is *dies non juridicus*, or not a judicial day, applies only to the practice of the Courts, and the construction of the rules, and not to statutory time, unless it be expressly excepted, as in the Constitution of the United States, which declares that any bill which shall not be returned by the President within ten days, (*Sundays excepted*,) after it shall have been presented to him, shall be a law.   *Art.* 1, *Section* 7.   *New Digest*, 1101.   (A solemn recognition, by the way, of the fact, that *ours* is a *christian* country, as contra-distinguished from Jew, Hindoo, Pagan, or Mohammedon!)

And while we still hold, that Sunday is not to be disregarded, whether it be the first or the last, or an intervening day, in counting the various times presented by law for the service of writs, notices, and all such matters; still, we think that a different rule should obtain in relation to appeals.

At Common Law, a judgment was entered on the roll of the record within the first *four days* of the next term after the trial, unless arrested within that time by some of the means allowed for that purpose.   *Tidd's Pr.* 568–9, 838–9, 904, 930.   *Four days* seem to be a kind of cabalistic period in the Court calendar. A *capias* had to lie four days in the Sheriff's office, the last four days of the return.   1 *B. & A.* 528.   A *sci. fa.* had to be left in the office four days to charge bail.   But it is unnecessary to multiply proofs.   See *Tidd, passim.*

Now, we have seen that the clause under consideration occurs in the Judiciary Act of 1799, which provides, that in all cases

Neal and others *vs.* Crew.

where a verdict shall be rendered, the party in whose favor it may be, shall be allowed to enter and sign judgment thereon, at any time within four days after the adjournment of the Court, at the Clerk's office, provided that "*within the time aforesaid,*" there be no stay of execution and no appeal entered within terms of the law, &c.

Now, may we not suppose, without doing violence to the probabilities of the case, that the Legislature, or lawyers in it, who framed this admirable Act, had their minds directed to the analogous proceedings in the Courts of Westminster Hall? And if so, is it not right that this provision in relation to appeals should be construed in the light of the rules of practice which obtain in those Courts, in reference to similar subjects? In the Court of King's Bench, Sunday was never reckoned as one of the four days for entering up judgments. And for other purposes, in the Common Pleas, it was counted, if an intervening day, but not, if it was the first or last of tne time. And here we find, no doubt, the reason for the contrariety of the practice which has obtained in our State Courts, as to whether or not Sunday should be regarded in relation to appeals—some of the Circuits adopting the practice in the King's Bench, and others of the Common Pleas. All going to show, however, that the profession in Georgia, have always interpreted this provision in the Judiciary, in view of the rules in the English Courts, and not of that which is adopted in reckoning statutory time, and by which Sunday is always counted, regardless of its collocation.

If necessary, we should "*strain hard*" to give this construction to the Act of 1799. The Justice's Courts throughout this State, sit generally on *Saturday.* In that Court, appeals must be entered within *three days* after judgment. Here Sunday always enters into the time. And hence a contrary construction would not only reduce virtually the period for appealing in this jurisdiction to *two* days instead of *three*, as guaranteed by law, but would probably cause every appeal to be dismissed now pending in these tribunals throughout the State.

The same inconvenience would result, as it respects the other Courts. There is scarcely a Superior Court holden in Georgia,

where Sunday does not constitute one of the four days which follow the adjournment, and within which the appeal is to be entered.

Our judgment, therefore, is, that four clear *days*, as they are called in the old books, or *working days*, as they might perhaps be more appropriately designated, are allowed for entering appeals; and that whether Sunday be the first or last, or an intervening day, it is not to be counted. And this would seem to be short enough time for parties to procure money to pay all costs which may have accrued, and give security, which it is often difficult to obtain.

All agree, that to the well-being of society, stated intervals of rest are absolutely necessary. We should not tempt mankind therefore, to yield obedience to municipal arrangements which overlook and disregard the moral law of the Great Jehovah, who, from the smoking top of Mount Sinai proclaimed to all the world, " Remember the Sabbath-day to keep it holy; in it thou shalt not do any work."

It is immaterial to determine whether the application to enter the appeal was made before or after 12 o'clock at night of Tuesday. The Court adjourned on Friday, and leaving out Sunday, the party was clearly within time.