## GHOLSTON vs. GHOLSTON.

1. A party to a libel for divorce, who may be dissatisfied with the *first* verdict, has a legal right to move that the verdict be set aside, and a new trial granted.

2. Commissions to take the depositions of witnesses, in answer to interrogatories, having been returned into Court, and opened more than one day before the cause was called for trial, a party who, upon inspection of the papers so returned endorsed upon them certain objections in writing, (for causes other than irrelevancy,) but does not call the attention of the Court to them before the cause is submitted to the jury, is not entitled to be heard upon them, when, in the progress of the cause, the depositions are offered in evidence. The objections must not only be *"taken,"* but *"determined,"* before the cause is submitted to the Jury. The onus is upon the party objecting, to invoke, in due time, the judgment of the Court upon his objections.

3. The charge of the Court below (incorporated into the opinion) correctly expounds the law of divorce, in such a case, upon all the points made against it in the bill of exceptions.

11. The sending with the Jury, to their room of a written charge, as delivered from the Bench, is incorrect practice.

12. The Court below commenced the final charge to the Jury before twelve o'clock on a Saturday night, and concluded it after that hour. The Jury remained in their room until after the Sabbath had passed away, and then returned their verdict: *Held,* That this does not vitiate the verdict, notwithstanding there may be reason to believe that they came to an agreement on the Sabbath day, and notwithstanding the Judge caused the Jury, by consent of parties to come into Court on the Sabbath, but upon the withdrawal of the consent by one party, remanded them before the verdict had been read.

**COERCING OR IMPROPERLY INFLUENCING JURY TO COMPEL THEM TO AGREE. For a bailiff in charge of a jury to tell them** while considering the case and apparently finding it difficult to agree, **that in his opinion the judge would keep them out a week or compel them to agree,** was such practice as **necessitates a new trial."** Obear *v.* Gray, 68 Ga. 182 (4), 186.

**CRUEL TREATMENT AS GROUND FOR DIVORCE.** "A libel for divorce on the ground of cruelty charged that the husband evinced repugnance toward his wife, absented himself from her much of the time without cause, neglected her while sick, refused to allow her to attend church, of which she was a member, or to supply her with the common necessities of wearing apparel, although possessed of an ample property, encouraged insubordination on the part of a servant towards

13. A Jury having had the case in charge for several hours, and being unable to agree, were informed by the Sheriff in whose custody they were, that "unless they should agree speedily, the Judge would take them with him to Elbert county, and that he (the Judge) was making preparations for that purpose:" *Held*, That this was a sufficient ground for setting aside the verdict and awarding a new trial, even though the representations made by the Sheriff be untrue.

Divorce, in Madison Superior Court. Tried before Judge THOMAS, at the March Term, 1860.

Jane Gholston filed a libel in Madison Superior Court, asking a divorce from James S. Gholston, her husband, on the ground of cruel treatment, alleging: That the said James S. habitually used harsh and indecent language to, and of, the libellant; that he imposed upon her laborious domestic drudgeries, which his pecuniary means and circumstances did not justify; that he encouraged his children to treat her with disobedience and disrespect; that he taunted her with his preference for other, and younger women, and that he attempted illicit intercourse with another woman; that he shook a cowhide over libellant, and actually threw her out of the house; that after repeated incivilities and insults, as well as a disregard of his obligations as a husband, he whipped the libellant with a cowhide, and compelled her to seek safety and refuge elsewhere.

Appended to the libel, is a schedule of the property owned by defendant at the time of the separation, which schedule is verified by the affidavit of the libellant, in which she states: That that portion of said property owned by defendant at the time of the marriage, is worth nine thousand dollars, and that portion owned at the time by the libellant is worth ten thousand.

The defendant, in his answer, denies the allegations of the libel, and resists the application for a divorce.

Inasmuch as there is no allegation in the record that the finding of the jury was contrary to the evidence, it is deemed unnecessary to give the evidence in this statement.

The libellant offered as evidence, the answers of various witnesses, taken by commissioners, some of which were objected to by counsel for the defendant, on the ground that one of the commissioners was the agent of the libellant, and biased in her favor; and that the commissioners consulted

her, sent away servants who had been given to her by her father, made a will leaving her only five dollars, drove her from the house, and upon her returning to her father, where she was delivered of a child, refused to contribute anything to her support or that of the child, and charged her with adultery, saying that the child was not his, but that of another man: Held, that such **conduct** would have **furnished ample grounds for the granting of a divorce by the English ecclesiastical courts. The word cruelty has no technical significance** as contradistinguished from

Gholston vs. Gholston.

another agent of the libellant during the time the witnesses were answering the interrogatories; and that the answers were not sworn to. Others were objected to, on the ground that the witness' name was not subscribed to the answers; and that the commissioners had not written their names inside of the package, but simply across the seals on the outside. Others were objected to on the ground: That the names of the commissioners were not inserted in the commission; and that the package was not sealed up with separate seals, but only pasted up, as envelopes usually are; and that there was no seal inside the package, and only the letters "com" written on a line below the commissioners' names.

All these objections were written on the envelopes containing the testimony, and were dated the 6th of March, 1860, whilst the trial commenced the 9th of March, 1860. None of the objections were *determined* before the case was submitted to the jury; wherefore, the presiding judge overruled the objections, and admitted the testimony.

The entire charge of the presiding judge, as well as the charges which he refused to give, as requested, and the qualifications which he made to such requests, are all given in the opinion of the Court, and are therefore omitted here.

When the Court concluded the charge, it was about half hour past midnight, Saturday night, or thirty minutes, A. M., Sunday. The Court remarked to the jury that they could consider of their verdict then, or wait in their room till Monday morning before commencing their investigation, just as they liked. The jury then retired and the Court took a recess.

At about three o'clock, P. M., on Sunday (same day) the jury sent for the judge, came down into their box, and informed him that they had agreed upon their verdict. Objection being made to the reception of the verdict at that time, the jury were ordered back to their room, and on Monday morning following, came into Court with a verdict in favor of the plaintiff for a total divorce, five thousand dollars, and costs, which verdict was then delivered and recorded.

Whereupon, the Court adjourned until the fourth Monday in July thereafter.

During the adjourned term of the Court, which commenced on said fourth Monday in July, the defendant, by his counsel, moved the Court to set aside said verdict, and to grant a new trial, on the following grounds, to wit:

---

its broad popular sense and many acts were held by those courts to be cruelty, but were not regarded as sufficient to authorize a divorce under their precedents, because not amounting to personal violence or creating a reasonable apprehnsion thereof." Myrick *v.* Myrick, 67 Ga. 771 (3), 783.

" 'Cruel treatment,' within the meaning of the Civil Code, §2427,

1st. Because the Court erred in permitting the plaintiff to read in evidence, against objection by the defendant, the depositions of Martha and Elizabeth C. Echols, Edna Gentry, Maria Herring, Francis Woods, Henrietta Tiller, and Celia Carrington.

2d. Because the Court erred in ruling that the plaintiff had a right to introduce in evidence her own sayings, spoken at a time when, as the witness, Poss, testified in answer to defendant's question as to his having complained to plaintiff about her marriage with defendant, he told her she ought to have a marriage contract.

3d. Because the Court erred in charging the jury, that what constitutes cruel treatment, in the meaning of the law, is a question of law for the Court.

4th. Because the Court erred in charging the jury, that if a husband inflicts on the wife, by force or violence, bodily pain or suffering, and especially degrading pain or suffering such as cowhiding or whipping, this would be cruel treatment. But this, and such as this, is not all that constitutes cruel treatment. The commission of acts which outrage the feelings of modesty and decency, such as threatening to commit, or attempting to commit, adultery, or cursing, abusing, or using insulting and opprobrious language, when done between husband and wife, whether by the husband to the wife, or by the wife to the husband, and in the knowledge, or coming to the knowledge, of both; these, also, if persisted in and unatoned for, constitute cruel treatment. Now, if you believe from the evidence, that the defendant, previous to the bringing of this suit, has been guilty of either of these kinds of cruel treatment, without sufficient justification, you ought to decree, by your verdict, either a total or conditional divorce.

5th. Because the Court erred in charging the jury, that when a woman sues her husband for a divorce, on the ground of cowhiding or whipping her, he can not justify, by showing opprobrious or abusive language on her part, because it is not *like conduct* in the language of the law.

6th. Because the Court erred in charging the jury: You will inquire from the whole evidence, do you believe he cowhided her? If he did, she is entitled to a divorce on that ground alone—no evidence being brought before you of like conduct to that on her part.

which provides that such treament shall be a ground for divorce, **is the wilful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb or health.** Odom *v.* Odom, 36 Ga. 286, approved and followed. Gholston *v.* Gholston, 31 Ga. 625, and Myrick *v.* Myrick, 67 Ga. 771, doubted, criticized, and distinguished." Ring *v.* Ring, 118 Ga. 183 (1), 187, 188.

**JURORS CAN NOT IMPEACH THEIR VERDICT. "The affidavits of**

7th. Because the Court erred in charging the jury, that all instances of misconduct on his (defendant's) part that you believe to be true, from the evidence, ought to be considered by you as to whether you will make the divorce, if granted, more favorable to her (plaintiff).

8th. Because the Court erred in charging the jury, that if they should find a partial divorce, they might give the plaintiff a portion of the property, belonging to the defendant, as her own, to do with as she pleased.

9th. Because the Court erred in refusing to charge the jury in the language requested by the defendant, that, if they believed, from the testimony, that the defendant was guilty of any mistreatment or cruelty towards plaintiff, and that after such treatment or cruelty was brought to her notice, she still voluntarily lived with him, this is evidence going to show that she consented to such treatment or waived her rights under it; and if she did consent to it, or waive her rights under it, then she can not claim a divorce on that ground.

10th. Because the Court erred in refusing to charge the jury, as requested, that if the libellant was consenting tacitly to the whipping defendant gave her—if he gave her any—though such consent was not known to the defendant at the time, then she is not entitled to a divorce for that cause. But the Court, after remarking to the jury that the above was good law, charged them, at the request of plaintiff's counsel, that there is no evidence of any consent in this case.

11th. Because the Court erred in sending out with the jury the written charge—the whole charge being in writing—and all going out together.

12th. Because the case was partly tried upon the Sabbath day—the Court having charged the jury, and the jury having retired and considered and determined upon their verdict on that day.

13th. Because the jury were improperly influenced to agree upon a verdict speedily on Sunday by representations, that unless they should agree speedily, the judge would carry them with him to Elbert county, and that he was making preparations for that purpose.

In support of the 12th and 13th grounds of the motion, defendant's counsel presented the following affidavits:

---

jurors may be taken to sustain, but not to impeach, their verdict." Civil Code, §5338. According to this rule, so much of the affidavits of the jurors as tended to show that the deputy sheriff or the bailiff had improper communications with the jury could not be considered by the judge, in passing upon the issue as to whether such communications were had with the jury; for if they were, it would be cause for a new trial, though the judge did not authorize them. Gholston v. Gholston, 31 Ga. 625. As the rule just referred to is so well settled, we take it

GEORGIA, Madison County:

Personally appeared in the open Superior Court of said county, William H. Saye and Lorenzo D. Ferguson, who, being duly sworn, depose and say: That they served as special jurors on the trial of the case of Jane Gholston *vs.* James S. Gholston—Libel for Divorce—tried at the regular March Term, 1860, of said Court, and that it was about half hour past twelve o'clock, A. M., Sunday, when the judge concluded his charge, and the jury retired to consider of their verdict, that said verdict was considered of, determined upon, written out, and signed on Sunday; that previous to their determination upon said verdict, the jury were informed by the officers having them in charge, that unless they should make up their verdict speedily, they would be carried out of the county and kept upon the jury until they should agree; that the judge had so said, and had engaged a conveyance for that purpose; and that said verdict having been so made up and signed, the jury came into Court about three o'clock, P. M., on Sunday, to deliver the same, but that objection being made to the reception of the verdict at the time, it was written over and delivered into Court after twelve o'clock, A. M., on Monday.                                   W. H. SAYE,

                                              L. D. FERGUSON.

Sworn to and subscribed in open Court, 24th July, 1860.

J. M. Skinner, Clerk.

GEORGIA, Madison County:

In the open Superior Court of said county, personally appeared William T. Moon, who, being duly sworn, says, on oath, that he was sheriff of Madison county at the regular March Term, 1860, of said Court, and as such, attended the jury engaged in the trial of the divorce case between Jane Gholston, libellant, and James S. Gholston, defendant, and that having understood from the judge and others that the Jury would be carried to Elbert county unless they should speedily agree upon a verdict, he (deponent) communicated this information to the jury on Sunday, and was informed by them that they had not then agreed upon a verdict, and that in a few hours thereafter, to wit: about three o'clock, P. M., on that day the jury informed the Court that they had agreed upon a verdict, and came out of their room to deliver it.                                   WM. T. MOON, Sheriff.

Sworn to and subscribed in open Court, 24th July, 1860.

Test: J. M. Skinner, Clerk.

that the judge did not consider that portion of the affidavits of the jurors to the effect that such communications were had." Tolbirt *v.* State, 124 Ga. 770. * * * "The findings of the trial judge on conflicting affidavits as to alleged misconduct of the jury while considering as to their verdict will, in the absence of abuse of discretion, be upheld

The Court held up the decision of the motion for a new trial until the September Term, 1860, of the Court, at which time he rendered his decision, overruling the motion, and refusing the new trial. As to the second ground taken in said motion, the judge certifies this to be the state of facts, to wit: Wm. L. Poss had been introduced by plaintiff. On cross-examination, he said: Plaintiff is my mother; her general character is not that of a very disagreeable person to live with; after her marriage with defendant, I don't know that I complained of her, but I told her she ought to have had a marriage contract; plaintiff offered to prove by the witness the balance of the conversation with his mother, which the Court decided he could do after objection made by defendant's counsel; defendant's counsel then moved to withdraw the question and answer as their evidence, which was objected to by plaintiff's counsel; the Court allowed the question and answer to be withdrawn, and then being withdrawn, the Court refused to allow plaintiffs' counsel to ask about the balance of the conversation; counsel moving for this new trial must have failed to read over these notes, which were filed in the clerk's office and subject to their inspection for more than four months.

The refusal of the presiding judge to grant a new trial is the error complained of.

T. M. Daniel, for the plaintiff in error.

Hester & Akerman, for defendant in error.

*By the Court.*—Jenkins, J., delivering the opinion.

This was a libel for divorce, filed by Jane Gholston, against James S. Gholston, for a divorce, a *vinculo matrimonii*, upon the ground of cruel treatment. At the March Term, 1860, of the Superior Court of Madison county, the cause came on for trial, and a verdict was returned granting a total divorce between the parties, and providing for division of the property between them.

A motion for a new trial was made by counsel for defendant, on sundry grounds, which will hereafter be considered. After argument, the Court below refused the rule absolute for a new trial, and plaintiff's counsel excepted, insisting on

by the Supreme Court. Buchanan *v.* State, 118 Ga. 751; King *v.* State, 119 Ga. 426; Sullivan *v.* State, 121 Ga. 183, 187; Desverges *v.* Goette, 121 Ga. 65." Id. 770.

**MISTRIAL THREAT BY JUDGE TO COERCE JURY.** "Under our laws, a judge has no right to carry a jury into a different county from that in which they are impanneled; **and any threat to do so, in case they did not find a verdict, was coercion,** and deprived the jury of that

Gholston vs. Gholston.

each ground taken, and assigning error upon the ruling of the Court on each.

1. In the Court below, a preliminary question was raised by the respondent to the rule *nisi,* upon which she moved to dismiss the rule, viz.: "That the defendant can not move for a new trial after the first verdict, and before the second, in a case where a total divorce is granted—the verdict, in such case, not being final as to him, and the law itself giving the appeal, without its being demanded by the defendant." The Court overruled the motion of respondent, and it is renewed here.

It is erroneous to say that the law gives the defendant, in a libel for divorce, an appeal, as a matter of course. An appeal annuls the verdict from which it is taken, unless the appeal be dismissed by consent, or on motion for irregularity, the verdict goes for naught—accomplishes nothing. But the Constitution provides, that "divorces shall be final and conclusive, when the parties shall have obtained the concurrent verdicts of two special juries, authorizing," etc. The first is as necessary to effectuate the divorce as the second. If there be any irregularity in the obtainment of the first, it is as important to the defendant that it be corrected, as a like irregularity in the second. The obtainment of the first verdict is an advance made, a position gained by the libellant; it is half the work accomplished. If illegally rendered, it ought to be set aside; but this can only be done by a motion made during the Term at which the verdict was rendered. We hold that the Court committed no error in overruling the motion to dismiss the rule *nisi.*

2. Certain depositions of witnesses, taken under commission, in answer to interrogatories attached, and when the plaintiff proposed to read them in the progress of the trial, defendant objected, for reasons other than the irrelevancy of the evidence. Plaintiff replied, that the commissions had been in Court, opened, and subject to inspection more than one day before the commencement of the trial, and that all objections then urged were bad in law, unless "taken and determined before the case was submitted to the jury."

Defendant rejoined, that the objections had been written out upon the envelopes to the commissions severally, before the cause was submitted to the jury, and must have been seen by plaintiff or her counsel.

free, voluntary consideration of the case invoked by the law." Spearman *v.* Wilson, 44 Ga. 473 (2), 477.

**SENDING OUT WRITTEN CHARGE WITH JURY.** "It was at most a mere irregularity to allow the written charge of the court to go out with the jury: and this not being objected to at the time, it is no cause for a new trial. Whether it is not the better practice in some cases, if not in all, quaere?" Chattahoochee Brick Company *v.* Sullivan,

The Court held that, in the language of the law, the objections must be "taken, *and determined* before," etc., and that the onus was upon the party objecting, not only to "take," but to ask a *determination* of the objections before going to the jury. We hold this ruling correct.

The exception taken to the overruling of the second ground in the motion 'for a new trial, is divested of all force by the explanation of the Court below appearing in the record, and therefore will not be considered.

3. The 3d, 4th, 5th, 6th, 7th and 8th grounds taken in the motion for a new trial allege errors in the charge given by the Court, as the exceptions cover nearly the whole of it.

We overrule all the exceptions from the 3d to the 8th inclusive, holding, that, on all the points therein made, the Court gave the law in charge to the jury.

"GENTLEMEN OF THE JURY:

"We have arrived at the end of the investigation of this case, which has been necessarily long, tedious and complicated. During the whole of it, I have endeavored, to the best of my ability, to hold the scales of justice evenly between the parties, and to give to each the amplest opportunity to lay their respective cases before you in the manner most satisfactory to themselves. Whether I have done this or not, is subject to review by a higher tribunal. No mistake of mine can by any possibility injure either of these parties. The evidence and the points decided all exist in writing; and this charge is put in writing in order that either party must have a correct statement of his grievance, if he chooses to appeal to that tribunal. And this reminds me to state to you right here, that while you alone can judge of the facts—while you alone can say what is true or what is false, you are bound by law to take the law from the Court; you are bound not to disregard the law as given you in charge by the Court, but you ought honestly and independently to enforce it according to the evidence. The reason and plain necessity for this obligation on your part will be seen at once, when I remind you that while it is true that no mistake of mine can injure the parties, because my judgments can be revised and corrected, it is equally true that the parties have no remedy against any mistake of yours in matters of law. No writ of error or bill of exceptions lies against you to the Supreme Court. If you, therefore, refuse to take the law

86 Ga. 50 (6). * * * "As no objection was made by counsel to sending the charge out, we think it no cause for a new trial. **Indeed, some of us regard it as a wholesome practice for every case.** But we all agree that at most it is only an irregularity, and that an omission to object was a waiver of objection. Bass *v.* Winfry, 20 Ga. 634, opinion by Benning, J." Id. 67.

from the Court, the injury to the parties may be totally without remedy. Our system of jurisprudence, therefore, ordains and establishes—and wisely ordains and establishes—that the jury taking the law in confidence and good faith from the Court, shall limit themselves scrupulously to their appropriate functions, which are fully discharged where they find the truth of the facts, and honestly apply the law given in charge by the Court to those facts.

"This is a suit for a divorce, brought by a woman against her husband, a full statement of the grounds for which is contained in the declaration read to you by the plaintiff's counsel. All these grounds, it is contended by the plaintiff, constitute what the law calls by the general name of cruel treatment. The divorce is not sought on any other grounds—none other is taken in the libel filed. Now, what constitutes cruel treatment, in the meaning of the law, is a question of law for the Court. If the husband inflicts on the wife, by force or violence, bodily pain or suffering, and especially degrading pain or suffering, such as cowhiding or whipping, this would be cruel treatment. But this, and such as this, is not all that constitutes cruel treatment. The commission of acts which outrage the feelings of modesy and decency, such as threatening to commit, or attempting to commit, adultery, or cursing, abusing, or using insulting and opprobrious language, when done between husband and wife, whether by the husband to the wife, or by the wife to the husband, and in the knowledge, or coming to the knowledge, of both—these, also, if persisted in, and unatoned for, constitute cruel treatment. Now, if you believe, from the evidence, that the defendant, previous to the beginning of this suit, has been guilty of these or either of these kinds of cruel treatment, without sufficient justification, you ought to decree, by your verdict, either a total or conditional divorce; and whether you allow a total or conditional divorce, is a question exclusively for you to decide, from the evidence, and the evidence alone; for the law says, "in case of cruel treatment on the part of one toward the other of the parties, the jury may, according to the circumstances of such case, determine whether the divorce shall be from the bonds of matrimony, or from bed and board;" the first part of which means a total divorce, and the last means a conditional or partial divorce. Evidence has been offered and admitted before you, tending to show

SUNDAY-SERVICE, LEGAL NOTICE OR ADVERTISEMENT MADE ON, VOID. "Sunday is dies non juridicus, and service can not be made, or legal notice given on that day, or the business or work of ordinary callings done. Therefore, the publication of the advertisement of a marshal's sale for taxes in a newspaper appearing on Sunday was not legal, and the sale thereunder passed no title." Sawyer v. Cargile, 72

Gholston vs. Gholston.

these several sorts of cruel teratment; but whether you be-
lieve the evidence or the charges to be true, from the evi-
dence, is a question exclusively for you. It is your duty to
examine well the evidence, and all the evidence on both sides,
and let your verdict show what are your honest convictions
on these points after having so examined it.

"On the trial of a defendant for an assault, or assault and
battery, opprobrious words or abusive language, may amount
to justification; and if the defendant were on trial for whip-
ping his wife, the question would arise, whether this provis-
ion of the law applied to the case of a man whipping his
wife? But such a question does not arise in this case. When
a woman sues her husband for divorce on the ground of cow-
hiding or whipping her, he can not justify himself by show-
ing opprobrious or abusive language on her part, because it
is not *like conduct,* in the language of the law. Abusive or
insulting language by a woman to her husband is not *like
conduct* with cowhiding or whipping the wife by the husband.
But opprobrious and abusive language, when used by the wife
to the husband, outrages the feelings of modesty and decency
as much as when used by the husband to the wife. Now, do
you believe, from the evidence, she did this, or was guilty of
conduct similar? If she did, she is not entitled to a divorce,
either total or partial, on the ground of his cursing or abus-
ing her, or threatening or attempting to commit adultery; for
it would all be *like conduct,* as the law terms it, both tending
alike to hurt and wound the feelings.

"Now, therefore, you will inquire, did he outrage her feel-
ings as she complains? Next, did she outrage his as he com-
plains? Is he guilty, and she not guilty, in this respect? If
so, she ought to have a divorce. Are they both guilty, or
she more guilty than he in the matter of insulting and wound-
ing each other's feelings? If so, you ought not to grant a
divorce.

"Now, passing from this, you will inquire from the whole
evidence, do you believe he cowhided her? If he did, she is
entitled to a divorce on that ground alone, no evidence being
brought before you of like conduct to that on her part. Though
I have charged you that abusing and insulting him is not
like conduct with cowhiding her, and can not be con-
sidered by you as a ground for refusing a divorce, if you be-
lieve he cowhided her; yet, it may, and, if true, ought to

Ga. 290. And see Dennis *v.* Sharman, 31 Ga. 607; Penal Code of 18ɷɔ,
§422.

**SUNDAY—VERDICT RENDERED ON.** "A judge of the Superior
Court **can not open Court and receive a verdict from the jury on the Sab-
bath day,** and such verdict so rendered, is illegal and a nullity." Bass
*v.* Irvin, 49 Ga. 436 (1), 439; Cheeseborough *v.* Vanness, 12 Ga. ɔ80.
**Appeals entered on Sunday, void.** Neal *v.* Crew, 12 Ga. 93.

be considered as one of the circumstances of the case to determine whether the divorce shall be from the bond of matrimony, or from the bed and board, and all other instances of misconduct on her part that you believe to be true, from the evidence, ought to be considered as to whether you will make the divorce, if granted, less favorable to her, and all instances of misconduct on his part that you believe to be true, from the evidence, ought to be considered by you as to whether you will make the divorce, if granted, more favorable to her.

"With regard to the contrary and conflicting evidence introduced here, if you believe it to be contrary and conflicting, you must weigh it all, and the circumstances surrounding it, and decide according to the preponderance of evidence. This being a civil case, you are to decide according to the preponderance of evidence, and need not believe, beyond a reasonable doubt, any fact in order to find it true.

"You must also bear in mind the difference between positive and negative evidence. When a witness says he saw a thing, that is positive evidence; when a witness says he did not see a thing, that is negative evidence. Now, when both witnesses are equally credible, and otherwise equally reliable, the positive evidence ought to prevail over the negative, and especially when the witness who testified negatively, not only that he did not see the thing, but also that he did not look for it.

"The defendant's answer has been read before you, and you have heard his statements on his side of the case. To put in this answer and to read it to you was his clear right, for the law says: The defendant's answer or defensive allegation in writing may extenuate, deny or contain as much matter, or as many circumstances in his defence, as he may think necessary and proper therein. But you must remember, this answer is not evidence, and must not be regarded by you only so far as it is sustained and proved by the evidence. You must look to the evidence, and the evidence alone, to decide how far you will find the answer true.

"With regard to the manner in which you will dispose of the property contained in the plaintiff's schedule, you will first inquire how far that schedule is sustained by the evidence? Did the defendant own the property contained in the schedule? Does he own it now? What is it worth? How much of it did he get by his marriage with the plaintiff?

Having ascertained these points, if you conclude to grant a total divorce, you will further find from all the surrounding circumstances established by the evidence, how much of it will you give to the plaintiff, if any? How much of it will you give to the defendant, if any? How will you divide it? All this you must find and decide by your verdict. The law leaves it to your discretion, and you must be controlled in your decision only by the evidence, and by the rules of justice, equity and good conscience.

"If you find and decree a conditional and partial divorce, you will still have to decide what separate maintenance and support you will allow to the wife. In this case—that is to say, in case of a conditional or partial divorce, the law says, the jury, by their verdict or decree, shall make provision out of the property of which the husband may be possessed for such maintenance and support. The manner in which you shall do this, the law leaves entirely at your discretion. You may do this by giving her a portion of the property as her own, to do with as she pleases, you may do it by giving a portion to support her during life, or you may do it by decreeing that the defendant shall pay to some officer, as the clerk of the Court, or to some trustee to be appointed, a monthly, or quarterly, or annual allowance in money for such support or maintenance."

9. The 9th ground of the motion alleges error, in that the Court refused to charge the jury as requested. This was the charge requested, viz.: "That if the jury believed, from the testimony, that the defendant was guilty of any mistreatment or cruelty towards the plaintiff, and that after such treatment or cruelty, was brought to her notice, she still voluntarily lived with him, this was evidence going to show that she consented to such treatment, or waived her rights under it; and if she did consent to it, or waive her rights under it, then she can not claim a divorce on that ground." It appears from the record, that this charge was given to the jury by the Court, except that His Honor declined to say, that a wife living with her husband after ill-treatment received from him, is evidence that she consents to such ill-treatment, and we think he very properly excepted from his charge that portion of the request.

10. The 10th ground of the motion assigns error in this: That the Court, after having charged the jury as requested

by defendant's counsel, "that if the libellant was consenting tacitly to the whipping defendant gave her (if he gave her any), though such consent was not known to the defendant at the time, then she is not entitled to a divorce for that cause," added at the request of plaintiff's counsel, "there is no evidence. of any consent in this case."

We think it better that judges, in charging juries, should abstain from saying to them, that there is, or is not, evidence in the case of this or that fact. But seeing nothing in this case proving directly, or raising the presumption of such consent, we would not, for that cause, send this case back.

11. The error complained of in the 11th ground, consists in the sending out of the written charge, as delivered to the jury. This we think an unsafe practice. The precautionary injunction to the jury not to read any part without reading the whole, is not a reliable safeguard against even an unintentional misuse of the document. Books from which the law is sometimes read to a jury by the Court, are not allowed to go to the jury, and yet, they might be sent, with the portion read, plainly marked, and an injunction that if they opened the book, they must read all that was so marked, and no more.

12. The 12th ground is, "that the case was partly tried upon the Sabbath day, the Court having charged the jury, and the jury having retired and considered, and determined upon their verdict on that day." These appear to be the facts arising here. The Court was actually delivering the charge to the jury on Saturday night, when the hour of 12 o'clock arrived, and the Sabbath day, according to our computation of time, had commenced before he concluded. This may have been inadvertence, but, under all the circumstances, was certainly no very grave error. On the Monday following, the same judge was, by law, required to open and hold a Court in another county. Beyond the conclusion of the charge, and the sending of the jury to their room, nothing was acually *done* in open Court on the Sabbath day. The jury could not legally be discharged until Monday morning, and must therefore of necessity be sent to their room. In the course of the Sabbath day, perhaps about three o'clock, P. M., the judge received a message from the jury that they had agreed upon their verdict, and the counsel of each party in the case being present, or having been summoned, con-

sented to its reception by the Court. The judge then went into the court-room, and sent for the jury. Upon their entrance, and before the verdict was read, one of the counsel in attendance retracted the consent he had given, that the verdict be received, and objected to it. The jury were then remanded, and their verdict was not received until Monday morning. Whatever judicial action was had in the case on the Sabbath day, was either inadvertent or inevitable. Of the latter character was the retention of the jury in their room. That being unavoidable, it is inconceivable how they could have been restrained from thinking and speaking of the case. We think what transpired on the Sabbath was not sufficient to vitiate the verdict; holding, at the same time, that all Courts should abstain from the transaction of ordinary business on that holy day.

13th. The 13th, and last ground upon which the motion for a new trial was based, is, "That the jury were improperly influenced to agree upon a verdict, by representations that unless they should agree speedily, the judge would carry them with him to Elbert county, and that he was making preparations for that purpose." This communication was made to them by the sheriff of the county, under whose official charge they had been placed.

This conduct of the sheriff was a gross and flagrant violation of his official duty. And, moreover, it can not be lightly regarded, in considering the validity of the verdict. It is an inflexible rule of law, that after a jury shall have been charged with a cause, having had the law and the evidence placed before them, by or under the supervision and direction of the Court, all communication between them and the rest of mankind shall be suspended, except by permission of the Court, until they shall have been discharged from the case. It is of the last importance that this rule be rigidly enforced, to the end that the administration of justice may be both pure and free from the suspicion of impurity. The ascertainment that some unauthorized communication had been had with the jury, the nature and purport of which was unknown, ought to vitiate a verdict. How much more a known communication, calculated to intimidate jurors, to unsettle resolution, based upon fixed and well considered opinion—to produce a conflict between a sense of duty and personal comfort, convenience or interest. Here were men withdrawn

from their families and their occupations, for the discharge of a public duty, with the confident expectation of being restored to their usual associations and employments at the close of the week. Being required to render a verdict in a cause submitted to them with unanimity, and being unable to agree in opinion, until that week had been spent and another had commenced, whilst in this State (for such is the evidence), the above communication is made to them by the ministerial officer of the Court, who professes that he *"understood (it) from the Judge and others."* It matters not that the communication was untrue. Dare we assume that the jury received it as untrue? Dare we speculate upon the probable influence it exerted? They were threatened by an officer of the Court (for that is the nature of the communication), who, in aid of the threat, proposes to have for it the high sanction of the Judge, with being thus carried away from their homes, their county and their business, and confined for an indefinite period in another county, unless they speedily agree upon a verdict. There are many men who would be more easily moved from an opinion or a purpose, by such a threat, than by the offer of a pecuniary bribe. We can not be assured that the agreement, subsequently made, but unattainable before, was not effected by this communication. The communication itself was clearly illegal; it was calculated to influence the jury, or some of them, and therefore the verdict is not free from taint. We are reluctantly constrained, for this reason, to reverse the judgment of the Court below, refusing a motion to set aside the verdict and grant a new trial.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, on the ground that there was an improper and illegal interference with the deliberations of the jury, after the Court had charged them in the case, by unauthorized communication with them of the sheriff of the county, and that the Court erred in not setting aside the verdict upon the thirteenth and last ground of defendant's motion for a new trial.