## S07A0696. WILEY et al. v. MILES.
(652 SE2d 562)

SEARS, Chief Justice.

Following his 2002 federal conviction on multiple drug, firearm, and money laundering charges, Donald Edward Miles filed a petition for writ of habeas corpus in the Fulton County Superior Court to set aside two 1965 state guilty pleas and prevent them from being used to enhance his federal sentence. The habeas court initially denied the petition but then granted it following a remand from this Court. The State appealed. We have determined that the habeas court misconstrued OCGA § 9-14-48 (e), which permits discretionary dismissal of habeas petitions in non-capital cases where the petitioner's undue delay in filing the petition has prejudiced the State in its ability to respond. We have also concluded that it would be an abuse of the habeas court's discretion to deny the State's motion to dismiss Miles's habeas petition under the facts of this case. Accordingly, we reverse the judgment setting aside the 1965 guilty pleas and remand with directions to dismiss the habeas petition with prejudice.

1. In 1988, federal officials arrested Miles for his role in a vast, complex methamphetamine conspiracy. The proceedings against Miles ended in a mistrial, and in June 1989, he was released from federal custody. The grand jury issued a superseding indictment against Miles, and Miles filed a motion for judgment of acquittal. When the federal district court denied the motion for acquittal in 1992, Miles absconded. In 1994, a federal jury convicted Miles in absentia on nine of the ten charges brought against him by the government.

Miles remained a fugitive from justice for another six years until June 2000, when federal officials finally recaptured him. The federal district court sentenced Miles to life in prison for the 1994 convictions, in part based on his two 1965 guilty pleas to state burglary charges in Georgia. Miles appealed his federal convictions and sentence to the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"). On May 10, 2002, the Eleventh Circuit affirmed Miles's convictions but vacated his sentence and remanded the case to the federal district court for resentencing.[1]

On June 24, 2002, before the federal district court could resentence him, Miles filed a pro se petition for writ of habeas corpus in the Fulton County Superior Court challenging his two 1965 guilty pleas. Miles claimed, as relevant here, that neither his attorney nor the trial judge advised him in 1965 that by pleading guilty to the burglary charges, he would be waiving his constitutional rights to a trial by jury, against self-incrimination, and to confront the witnesses against

---

[1] *United States v. Miles*, 290 F3d 1341 (11th Cir. 2002).

him. The habeas court denied the petition on March 18, 2004, and Miles appealed. On January 11, 2005, this Court entered an order remanding the case to the habeas court for reevaluation of Miles's claim that his 1965 guilty pleas were not knowingly, intelligently, and voluntarily entered.

On remand, the government filed a renewed motion to dismiss the habeas petition based in large part on a newly enacted statute, OCGA § 9-14-48 (e), which provides as follows:

> A [habeas corpus] petition, other than one challenging a conviction for which a death sentence has been imposed or challenging a sentence of death, may be dismissed if there is a particularized showing that the respondent [i.e., the government] has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows by a preponderance of the evidence that it is based on grounds of which he or she could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the respondent occurred. This subsection shall apply only to convictions had before July 1, 2004.

The government noted that there was no transcript of the 1965 plea colloquy, and that the court reporter's notes had been destroyed 24 years later in 1989 in accordance with the Fulton County Superior Court's records retention policy. The government pointed out that the trial judge from the 1965 plea colloquy was now dead, as were the district attorney, the assistant district attorney, and Miles's own defense attorney, leaving Miles as the only living witness to what occurred at the 1965 hearing.[2] In response, Miles argued that this Court had implicitly rejected the government's argument based on the new statute because it was not mentioned in the remand order. Miles also claimed that he could not have acquired "knowledge" of the "grounds" for his habeas petition "by the exercise of reasonable diligence" prior to the destruction of the court reporter's notes of the proceedings because the records were destroyed in 1989, but his federal sentence was not enhanced in part on the basis of the 1965 guilty pleas until 2002.

On June 27, 2006, the habeas court entered an order denying the government's motion to dismiss the habeas petition. The habeas court agreed with the government that Miles's long delay in filing the

---

[2] The government initially asserted that the court reporter was also deceased. The government later corrected that statement, indicating that while the court reporter was still living, she had no specific recollection of Miles's 1965 plea colloquy.

habeas petition had prejudiced its ability to respond. However, the habeas court agreed with Miles that because the harm he sought to prevent from the 1965 convictions — i.e., the enhancement of his federal sentence — did not occur until 2002, Miles could not have known, through the exercise of reasonable diligence, of the "grounds" for his habeas petition until that time.

Three months later, on September 8, 2006, the habeas court granted Miles's habeas petition and set aside the two 1965 burglary convictions. The habeas court first noted that "waiver will not be presumed from a silent record," citing the United States Supreme Court's seminal 1969 decision in *Boykin v. Alabama*.[3] The habeas court then found that "[d]ue to the amount of time that has passed" between the entry of the guilty pleas in 1965 and the filing of the habeas petition in 2002, "the records and notes of the hearing have been destroyed[,] and there are no witnesses with an independent recollection of the events other than the Petitioner." The habeas court therefore concluded that Miles did not knowingly and voluntarily waive his constitutional rights before entering into the 1965 guilty pleas and granted the writ. The State appealed.[4]

2. We note at the outset that the Supreme Court's decision in *Boykin* provides no basis for setting aside Miles's 1965 guilty pleas. In *Boykin*, the high court held that a guilty plea must be set aside unless the record of the plea colloquy or extrinsic evidence affirmatively shows that the defendant knowingly, intelligently, and voluntarily waived his constitutional rights: (1) against compulsory self-incrimination; (2) to be tried by a jury; and (3) to confront his accusers.[5] Miles contends that because the records of the 1965 plea colloquy no longer exist, and there is no extrinsic evidence regarding what happened at the hearing aside from his own self-serving testimony, *Boykin* requires that the guilty pleas be set aside.

There is no denying that the decision in *Boykin* effected a sea change in state criminal procedure. However, *Boykin*'s innovation lay not in the requirement that guilty pleas in state criminal proceedings be entered knowingly, intelligently, and voluntarily; that was already constitutionally required as an element of due process by the time *Boykin* was decided. As the Court said in a case decided less than a year after *Boykin*, "[t]he requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized."[6]

---

[3] 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).

[4] During the pendency of the appeal, Miles filed motions in this Court to dismiss the State's appeal and to strike an amicus brief filed by the Georgia District Attorneys Association. Both motions are meritless and are hereby denied.

[5] *Boykin*, supra, 395 U. S. at 242-243.

[6] *Brady v. United States*, 397 U. S. 742, 747, n. 4 (90 SC 1463, 25 LE2d 747) (1970).

Rather, "[t]he procedural element added in *Boykin* was the requirement that the *record must affirmatively disclose* that a defendant who pleaded guilty entered his plea understandingly and voluntarily."[7] Thus, *Boykin* imposed a constitutional record-keeping requirement on the states if they hoped to insulate state guilty pleas from future attacks on federal constitutional grounds.

It is undisputed that the records of the 1965 plea colloquy have been destroyed and that there is no one alive other than Miles who can testify regarding what happened at the hearing. Thus, if *Boykin* applies to Miles's 1965 guilty pleas, the habeas court correctly set them aside under *Boykin*. However, at the time of the 1965 plea colloquy, *Boykin* had not yet been decided. *Boykin* was not decided until June 2, 1969, four years after the plea colloquy in question. To be sure, Miles's guilty pleas were constitutionally required to be knowingly, intelligently, and voluntarily entered. But the state was not yet required, as a precondition to having the guilty pleas upheld in future proceedings, to make and preserve records of the plea colloquy in addition to the signed guilty plea itself. Accordingly, unless *Boykin* applies retroactively, it provides no basis for setting aside Miles's 1965 guilty pleas.

Whether the standards of *Boykin* should be applied retroactively or not was a question of immediate and enormous importance following the issuance of the decision in 1969.[8] As a result, numerous state and federal courts addressed the issue explicitly, and virtually every court that considered the question[9] — including this one[10] — held squarely that *Boykin* does not apply retroactively to guilty pleas entered prior to June 2, 1969, the date *Boykin* was decided. Miles makes no argument for revisiting that determination at this late date. Thus, to the extent Miles's claim for relief rests on the decision in *Boykin*, it must be denied.

---

[7] *Brady*, supra, 397 U. S. at 747, n. 4.

[8] See *Pennsylvania v. Godfrey*, 254 A2d 923 (Pa. 1969) ("[I]t is staggering to the imagination to contemplate the chaos which would result if *Boykin* were applied retrospectively. The overwhelming majority of all convictions result from quilty pleas. In a great many of these [pre-*Boykin*] cases, inadequate on-the-record examinations were conducted. This would mean that countless cases would have to be retried if *Boykin* were applied retroactively.").

[9] Arthur N. Bishop, *Waivers in Pleas of Guilty*, 60 FRD 513, 530 (1974) ("The decisions unanimously agree that *Boykin* is not retroactive, applying only to guilty pleas accepted after June 2, 1969."). Compare *McCarthy v. United States*, 394 U. S. 459, 466 (89 SC 1166, 22 LE2d 418) (1969) (holding Federal Rule of Criminal Procedure 11 requires federal courts to establish on the record that defendant has knowingly, intelligently, and voluntarily waived "his privilege against . . . self-incrimination, his right to trial by jury, and his right to confront his accusers" before accepting guilty plea) and *Halliday v. United States*, 394 U. S. 831, 833 (89 SC 1498, 23 LE2d 16) (1969) (analyzing the retroactivity issue as though *McCarthy* involved a constitutional ruling and holding that "only those defendants whose guilty pleas were accepted after April 2, 1969 [i.e., the date of the decision in *McCarthy*] are entitled to plead anew").

[10] *Britt v. Smith*, 274 Ga. 611, 614-615 (556 SE2d 435) (2001); *Laidler v. Smith*, 227 Ga.

3. OCGA § 9-14-48 (e) authorizes the discretionary dismissal of a petition for writ of habeas corpus in a non-capital case under certain circumstances. Specifically, the government must show that the habeas petitioner's delay in filing the petition has prejudiced its ability to respond. Moreover, dismissal under this provision is unavailable if the habeas petitioner proves by a preponderance of the evidence that he or she did not know of the grounds for the petition, and could not have known of them through the exercise of reasonable diligence, prior to the events that prejudiced the government.

The habeas court correctly found that Miles's 38-year delay in filing his petition for writ of habeas corpus challenging the 1965 guilty pleas prejudiced the government. By the time Miles filed his petition, the trial judge, the prosecutors, and his own defense attorney had all died. Unsurprisingly, the court reporter no longer had any specific memory of the plea colloquy, and the Fulton County Superior Court, after keeping the court reporter's notes for nearly a quarter of a century, had finally destroyed them pursuant to its records retention policy. By the time the records were destroyed, Miles had been through serving the prison term imposed for the two 1965 convictions for more than a decade.

The habeas court nevertheless concluded that it could not dismiss the petition under OCGA § 9-14-48 (e) because Miles proved by a preponderance of the evidence that he could not have discovered the "grounds" for the petition prior to 1989. The habeas court reasoned that the "grounds" for the petition consisted of the harm Miles sought to avoid by having the 1965 guilty pleas invalidated, i.e., enhancement of his federal sentence in 2002. However, the habeas court's equation of the "grounds" for the habeas petition with the harm Miles sought to avoid, enhancement of his federal sentence, has no basis in the statutory text. It is clear from context that the "grounds" referred to in OCGA § 9-14-48 (e) are the factual and constitutional bases for the petitioner's claim that the writ should be granted. Here, the "grounds" for Miles's petition consisted of the factual circumstances surrounding the entry of his guilty pleas in 1965 and the constitutional requirement that a guilty plea be knowing, intelligent, and voluntary.

The factual basis for Miles's petition was complete as soon as the pleas were entered in 1965, and the constitutional basis existed long before that time.[11] Accordingly, the habeas court erred in concluding that Miles had proven by a preponderance of the evidence that he did

759, 760 (2) (182 SE2d 891) (1971).
    [11] *Brady,* supra, 397 U. S. at 747, n. 4; *Kercheval v. United States,* 274 U. S. 220, 223 (47 SC 582, 71 LE 1009) (1927).

not know, and could not have known through the exercise of reasonable diligence, the "grounds" for his 2002 habeas petition until after the events that prejudiced the government's ability to respond had occurred. The habeas court therefore had the discretion to grant the government's motion to dismiss Miles's habeas petition.

4. Normally, we would simply reverse the habeas court's judgment and remand the case for further proceedings to allow the habeas court to exercise its discretion and decide, in the first instance, whether the government's motion to dismiss Miles's habeas petition should be granted or denied. However, given Miles's extreme delay in filing his habeas petition, the total prejudice to the government in its ability to respond, and Miles's failure to offer any legally valid excuse for not filing the petition sooner, it would be an abuse of the habeas court's discretion to deny the government's motion to dismiss the habeas petition. Thus, in the interest of judicial economy, we not only reverse the habeas court's grant of Miles's habeas petition, but also remand the case with instructions to the habeas court to dismiss the petition with prejudice.

*Judgment reversed and case remanded with direction. All the Justices concur.*

DECIDED OCTOBER 29, 2007.

*Paul L. Howard, Jr., District Attorney, David K. Getachew-Smith, Christopher M. Quinn, Bettieanne C. Hart, Assistant District Attorneys, H. Allen Moye, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General,* for appellants.

*Garland, Samuel & Loeb, Donald F. Samuel, William C. Lea,* for appellee.