S10A1093. FLINT v. THE STATE.
(701 SE2d 174)

HINES, Justice.

We granted defendant Lorenzo Flint's application for a certificate of probable cause to appeal an order dismissing his petition for writ of habeas corpus in order to consider the propriety of the habeas court's conclusion that, under OCGA § 9-14-48 (e),[1] the State had proven that it was prejudiced in its ability to respond to petitioner's petition for writ of habeas corpus due to petitioner's delay in filing it. For the reasons that follow, we affirm.

Flint was indicted for one felony count and one misdemeanor count of violation of the Georgia Controlled Substances Act, and on June 29, 1988, he pled guilty to the charges. He was sentenced to five years with four years to be served in prison and one year to be served on probation for the felony count and twelve months to serve on the misdemeanor count. In 1993, Flint was convicted of federal drug

---

[1] OCGA § 9-14-48 (e) provides:

A petition, other than one challenging a conviction for which a death sentence has been imposed or challenging a sentence of death, may be dismissed if there is a particularized showing that the respondent has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows by a preponderance of the evidence that it is based on grounds of which he or she could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the respondent occurred. This subsection shall apply only to convictions had before July 1, 2004.

trafficking offenses, and the 1988 state drug convictions were used in enhancement of his sentence.

Nearly twenty years after his state convictions, in 2007, Flint filed a pro se petition for writ of habeas corpus in the Superior Court of Fulton County, and on January 17, 2008, the superior court entered an order denying habeas corpus relief based, inter alia, on procedural default. Flint sought an appeal from this Court, and in March 2008, this Court granted a certificate of probable cause to appeal, and by order remanded the case with direction that the habeas court hold a hearing, which was to be transcribed, and consider whether the petition was procedurally barred and subject to dismissal under OCGA § 9-14-48 (e).

Following remand, the habeas court[2] held a hearing on June 16, 2009, at which Flint testified telephonically. The court then entered an order dismissing the petition under OCGA § 9-14-48 (e), based on findings that Flint had delayed twenty years in filing his petition, that the State was prejudiced in its ability to respond, and that Flint had not shown by a preponderance of the evidence that his petition was based upon grounds of which he had no actual knowledge, or by the exercise of reasonable diligence should have had knowledge, prior to the occurrence of circumstances prejudicial to the State.

Thus, the analysis of the propriety of the habeas court's action necessarily focuses on the provisions of OCGA § 9-14-48 (e), which

> authorizes the discretionary dismissal of a petition for writ of habeas corpus in a non-capital case under certain circumstances. Specifically, the government must show that the habeas petitioner's delay in filing the petition has prejudiced its ability to respond. Moreover, dismissal under this provision is unavailable if the habeas petitioner proves by a preponderance of the evidence that he or she did not know of the grounds for the petition, and could not have known of them through the exercise of reasonable diligence, prior to the events that prejudiced the government.

*Wiley v. Miles*, 282 Ga. 573, 577 (3) (652 SE2d 562) (2007).

The inquiry is two-fold, and the threshold question is the existence of prejudice to the State in attempting to respond to the habeas petition. As to the issue of assessing prejudice, Flint urges that this Court should be guided by interpretations of former Rule 9 (a)[3] of the Rules Governing Section 2254 Cases in the United States

---

[2] A different judge presided over this habeas proceeding.

[3] This rule provides:
A petition may be dismissed if it appears that the state of which the respondent is

District Courts[4] because of its similar wording to OCGA § 9-14-48 (e); thus, he argues, inter alia, that the State's burden should be heavy in seeking a dismissal, that application of the statutory provision permitting dismissal should be limited, that the State should have the burden of making a particularized showing of prejudice, and that the passage of time alone should not be sufficient to constitute prejudice.

First, it should be noted that while Rule 9 (a) provided the standard for permitting dismissal of a habeas corpus petition in circumstances in which the State has been prejudiced by the delay in filing, it is no longer extant; there is now a one-year statute of limitation as provided in 28 USC § 2244 (d) (1), as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214. As this Court has plainly outlined, an assessment of prejudice must involve an examination of the claims made by the petitioner in seeking habeas corpus relief and the capability of the State to respond given the passage of time in lodging such claims. *Wiley v. Miles*, supra at 577 (3).

Flint's petition for writ of habeas corpus alleged eight grounds for relief: (1) the guilty plea and judgment of conviction are void because they bear what is only alleged to be Flint's signature and that signature is in the space designated for the signature of the attorney rather than that of the defendant; (2) Flint was denied counsel and compelled to incriminate himself during a meeting with the assistant district attorney, resulting in prejudice to his trial defense and ultimately causing him to enter his guilty plea; (3) counsel involved in Flint's plea, namely attorney Hester, had a conflict of interest resulting from, inter alia, a prior attorney-client relationship, which affected Flint's preliminary hearing and proposed trial strategies, and resulted in his guilty plea; (4) Flint's plea was not voluntarily or intelligently made because, inter alia, he was not advised of the *Boykin*[5] rights either prior to or during the plea and he was coerced by attorney Hester into entering the plea before a visiting judge because Hester told him "to plead guilty right now, or return back before the assigned judge who will find you guilty and who will impose a much harsher sentence than that of the visiting judge"; (5) attorney Hester affirmatively misadvised Flint of the

---

an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

[4] Rule 9 (a) was interpreted as a codification of the equitable doctrine of laches as applied to habeas corpus petitions. *Walters v. Scott*, 21 F3d 683 (C.A.5, Tex. 1994).

[5] See *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).

consequences of his plea and sentence; (6) the sentence entered on the felony drug charge was illegal (for an unspecified reason) at the time it was imposed; (7) Flint's counsel failed to appeal his conviction and sentence despite Flint's request to do so; and (8) Flint suffered the ineffective assistance of counsel because counsel did not raise grounds one through seven, including the failure to investigate and present Flint's alleged trial defense, and Hester was ineffective in advising Flint to enter a guilty plea so soon after Flint's arrest and without exploring possible defenses.

Thus, each and every ground raised by Flint directly involves or potentially implicates actions by the plea court, Flint's defense attorney Hester, and the assistant district attorney involved in the case. The State presented to the habeas court uncontroverted affidavit evidence that defense counsel Hester had died, in fact less than a month after Flint filed his petition, and that the assistant district attorney involved in the pleas could not provide specifics about Flint's case and was able to make statements about only general practices and procedures in criminal cases, which could not address, much less resolve, Flint's complaints. Both the judge and the court reporter involved in the pleas were octogenarians and no longer available or able to provide any relevant information. Any existing notes regarding the pleas were in "pen writing," a process no longer used, and in a "very personal" shorthand which could not be deciphered, and one from which no court reporter would certify a record; there was no official paper record whatsoever and no back-up tape recording of the proceedings. Thus, the State presented a scenario of far more than the mere passage of time affecting its ability to respond to Flint's petition; rather the delay brought into sharp focus the ravages of time on the ability to reconstruct the circumstances of Flint's pleas of guilt to the drug charges. As the habeas court accurately observed during the hearing in the matter, the lapse in time resulted in a situation in which it could make no substantive determinations regarding the claims in Flint's petition.

As to the question of whether Flint proved by a preponderance of the evidence that, prior to the events prejudicing the State's response, he did not know of the grounds for his habeas petition, and could not have known of them through the exercise of reasonable diligence, it must be resolved adversely to Flint. Indeed, the record belies any assertions of lack of timely actual or constructive knowledge by Flint. The gravamen of Flint's complaints on habeas is that he was misled, in some form or fashion, regarding the pleas and their punitive consequences. But, the record contains signed "declarations" expressly "under the penalty of perjury" by Flint and his mother regarding their knowledge, prior to and at the time of the pleas, of circumstances allegedly giving rise to his habeas claims,

including Flint's immediate dissatisfaction with his received punishment. Indeed, as the State maintains, the record supports an alternate conclusion that Flint's delay in asserting his challenge on habeas was because his guilty pleas to the state drug charges had no collateral consequences until such time as they were to be used for the enhancement of his federal sentencing.

Given Flint's extreme delay in filing his habeas petition resulting in the total prejudice to the government in its ability to respond, and Flint's failure to meet his burden of proving a legally valid excuse for not filing the petition sooner, the habeas court did not abuse its discretion in dismissing Flint's habeas petition pursuant to OCGA § 9-14-48 (e). *Wiley v. Miles,* supra at 578 (4).

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., and Thompson, J., who dissent.*


HUNSTEIN, Chief Justice, dissenting.

*Boykin v. Alabama* was rendered in 1969. 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969). The United States Supreme Court held in that case that it is error for a state trial court to accept a defendant's guilty plea without an affirmative showing on the face of the record that the plea was intelligent and voluntary: "[p]resuming waiver from a silent record is impermissible." Id. at 242. Because a record of the guilty plea hearing helps to ensure that the State can meet its burden of proof on the voluntariness of the plea and to enable reviewing courts to determine that the rights of the accused have been protected, see *State v. Germany*, 245 Ga. 326, 328 (265 SE2d 13) (1980), this Court since 1982 has expressly required that the record of a guilty plea hearing must be adequate for a reviewing court to determine whether the mandate of *Boykin v. Alabama* was followed. *Goodman v. Davis*, 249 Ga. 11 (287 SE2d 26) (1982). Reinforcing this mandate, the Uniform Superior Court Rules have required the superior courts of this State since July 1, 1985 to make and preserve a verbatim record of the proceedings at which a defendant enters a plea of guilty. USCR 33.10.

Flint pled guilty to a felony offense in Fulton County Superior Court on June 29, 1988, meaning that *Boykin v. Alabama* had been the law for 19 years; that *Goodman* and this Court's requirement of an adequate record of a guilty plea hearing had been the law for six years; and that USCR 33.10 had for 12 months almost to the day mandated the making and preservation of a verbatim record of guilty plea proceedings. Yet it is uncontroverted that the only record of Flint's felony guilty plea proceeding consists of indecipherable notes made by a court reporter who was a "pen writer and not a machine shorthand reporter," i.e., someone who hand wrote the proceedings by means of a personal shorthand. According to Melanie Fisher, a

current Fulton County Superior Court court reporter who inquired into the matter:

> The court reporter who took the Flint plea was a Ms. Helen Clark, who was a pen writer and not a machine shorthand reporter. She is no longer available to transcribe the plea proceeding.
>
> The style of court reporting employed by Ms. Clark has not been commonly used for approximately 20 years.
>
> I contacted a reporter in South Georgia who is one of the few remaining pen writers that I know of to inquire if she could perhaps transcribe it as requested. She informed me that she would not feel comfortable making such an attempt because pen writing was such a personal style of reporting. She, therefore, would not feel comfortable about the accuracy of producing a typed transcript from someone else's notes.
>
> I was also unable to find any backup tape recording of the proceedings.[6]

According to a supplemental brief from the State that is contained in the record,[7] the trial judge who presided over Flint's guilty plea hearing

> is a retired octogenarian. He now lives in senior citizens housing and suffers from declined health. . . . The octogenarian court reporter retired some almost [sic] 20 years ago and no longer lives in the state of Georgia. Any court notes would be in the shorthand of the above-referenced court reporter who cannot be located for the purposes of deciphering and authentication.

It thus appears that the court reporter has not been "available" for "some almost 20 years."[8] No explanation was provided why this particular court reporter was allowed to become unavailable before she had provided some manner of a transcript capable of being deciphered by persons other than herself.

---

[6] Fisher then speculated that, even had she found such a recording, it "probably would not be a viable option" because "more likely than not" it would be unusable due to its age.

[7] Although the trial court at the hearing reiterated some of this information in its comments and the majority cites it as evidence, none of this information is present in the record in the form of any sworn document or testimony.

[8] It is well established that a party in a criminal proceeding may make admissions in judicio in pleadings, motions, and briefs. See *Bannister v. State*, 202 Ga. App. 762 (1) (b) (415 SE2d 912) (1992).

OCGA § 9-14-48 (e) places the burden on the State to make a "particularized showing" as to the reasons why it has been "prejudiced in its ability to respond to the petition [as the result of] delay in its filing." Under the plain language of this statute, the burden shifts to the petitioner only *after* the State has made this particularized showing. I respectfully dissent to the majority's affirmance of the habeas court's conclusion that the State carried its burden under OCGA § 9-14-48 (e). At the time of Flint's plea hearing, the law was crystal clear that the State had a constitutional obligation to make and preserve a verbatim record of the proceedings at which a defendant enters a plea of guilty. Regardless of the questionable wisdom of a court of record allowing a court reporter to *make* a verbatim record of a guilty plea hearing in such a "personal" manner that no one else could transcribe it, a court of record clearly fails in its mandate to *preserve* a record of guilty plea hearing proceedings for appellate review when it allows such personal notes to serve as the sole record of the proceedings without concurrently maintaining a means of deciphering those notes. By utilizing a court reporter whose shorthand notes could not be read by any other person and allowing that court reporter to become unavailable before those shorthand notes were preserved in a manner enabling others to transcribe them, the State failed to ensure that it would be able to meet its burden of proof on the voluntariness of the plea and to enable reviewing courts to determine that the rights of the accused have been protected.[9]

Moreover, as the State's admission in its supplemental brief establishes, this is not a case in which the transcript has been lost over time: this transcript has been lost for "some almost 20 years," when the court reporter, who transcribed the hearing in such a "personal" manner that no one else can decipher it, retired and moved out of state without leaving behind any means for another to transcribe her notes. The evidence adduced by the State establishes uncontrovertedly that no other record of Flint's guilty plea hearing exists; it also establishes uncontrovertedly that even another pen writer could not read this court reporter's notes, thereby eliminating any possibility that someone closer in time to the court reporter's retirement might have been able to decipher her notes. It thus appears, based on the uncontroverted evidence, that the State never established that the record of Flint's guilty plea was *ever* available. It seems that the only thing Flint could have accomplished by filing his

---

[9] It is mere speculation whether, had Flint filed his petition earlier, the State could have recreated the hearing proceedings through the recollection of the trial judge, the ADA and defense counsel.

petition earlier would have been to reveal sooner rather than later the total unavailability of the guilty plea hearing transcript.[10]

Given this uncontroverted evidence that the State could not have been prejudiced by Flint's delay in filing his petition, I would hold that the habeas court clearly erred as a matter of fact when it concluded that Flint's delay in filing his petition had any adverse impact on the State's ability to provide a transcript of the guilty plea hearing.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED OCTOBER 18, 2010.

Lorenzo E. Flint, Jr., *pro se.*
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, David K. Getachew-Smith, Assistant District Attorneys*, for appellee.
*Sarah L. Gerwig-Moore, Leigh S. Schrope*, amici curiae.

---

[10] Moreover, the State failed to prove that the participants to the proceedings (other than Flint) lacked all memory of the proceedings as it adduced evidence only as to the assistant district attorney (no memory) and defense counsel (deceased).