## HARRIS *v.* THE STATE.

Under the facts of this case the trial judge erred in refusing to grant a new trial, on an extraordinary motion, on the ground of improper communication with the jury.

No. 2095. NOVEMBER 12, 1920.

Indictment for murder. Before Judge Wright. Floyd superior court. May 7, 1920.

Charlie Harris was indicted, tried for murder, and convicted. He was sentenced to be hanged. He moved for a new trial. It was refused. He excepted, and the judgment of the court below was affirmed. 149 *Ga.* 724 (102 S. E. 159). After the judgment of the Supreme Court had been made the judgment of the superior court the defendant filed an extraordinary motion for new trial, on the following state of facts: The jury trying the defendant retired to consider their verdict about five o'clock on Friday afternoon, and about forty-eight hours later, on the afternoon of Sunday following, notified the deputy sheriff, Redden, under whose official charge they had been placed, that they could not agree upon a verdict and that they wished to go home, and requested the deputy sheriff to so inform the judge. The deputy communciated with the judge, and then returned to the jury room and stated to the jury that the judge had said that he could not help them, and that they would have to thrash it out and make a verdict, at the same time telling the jury that "the judge would keep them locked up until they did make a verdict." In a few minutes after the deputy had made the foregoing state-

ment to the jury, the jury notified the deputy that they had agreed upon a verdict, and the verdict was received by the court. The deputy sheriff himself made an affidavit in which the foregoing facts are stated, and in which it was also stated that the jury appeared to be restless and impatient and anxious to go home all during Sunday. The character of the deputy sheriff for truth and veracity is sustained by the affidavits of other witnesses. The defendant and each of his counsel made affidavits in which they disclosed how and when they learned of the foregoing communication to the jury, and from which it appeared that the extraordinary motion for new trial was filed immediately after the accused and his counsel had learned of the communication to the jury. The motion was technically complete. On the hearing of the motion, the State, by way of counter-showing, offered an affidavit by seven of the jurors. It is stated in this affidavit that the five jurors who did not sign the affidavit had all along voted for the verdict as rendered before the statement of the deputy had been made to the jury. Only two of the jurors had voted for a verdict of guilty with a recommendation to mercy, and these two jurors joined in the affidavit. The affidavit states that the verdict actually agreed to by the twelve jurors trying the case was based entirely upon the law and the evidence, and was in no wise influenced by the statement of the deputy sheriff. The affidavit discloses that two of the jurors had since died, but the failure of the three jurors who were still in life to make an affidavit sustaining their verdict is not accounted for. At the conclusion of the hearing of the extraordinary motion for new trial, on March 6, 1919, the judge announced that he would allow counsel for the State a reasonable length of time to get affidavits from these three jurors. No affidavits from these three jurors were offered or filed, and no explanation of the failure of the State's counsel to procure such affidavits appears in the record. The motion was overruled, and the movant excepted.

*Len B. Guillebeau* and *W. H. Ennis,* for plaintiff in error.

*R. A. Denny, attorney-general, Claude H. Porter, solicitor-general,* and *Graham Wright,* contra.

GEORGE, J.  In *Harris* v. *Roan,* 119 *Ga.* 379 (46 S. E. 433), it was ruled: " The extraordinary motions or cases contemplated by the statute are such as do not ordinarily occur in the trans-

action of human affairs; as, when a man has been convicted of murder, and it afterwards appears that the supposed deceased is still alive, or where one is convicted on the testimony of a witness who is subsequently found guilty of perjury in giving that testimony, or where there has been some providential cause, and cases of like character." See also *Cox* v. *Hillyer,* 65 *Ga.* 57; *Wheeler* v. *State,* 149 *Ga.* 473 (100 S. E. 568). This court in *Doyal* v. *State,* 73 *Ga.* 72, announced the rule governing in cases of this character, as follows: (1) " After the trial of a cause by the jury and the return of a verdict of guilty, and the refusal of a new trial by the circuit court, and the affirmance of that judgment by this court, the grounds of the second motion for a new trial will be scrutinized closely, and must be laid in the very foundations of the purity of jury trial, to authorize the grant of such an application." (2) " The scrutiny will be closer by this court, and its power exercised with more hesitation, when the presiding judge has refused to interfere with the verdict, on the ground of the disqualification of a juror." In that case the judgment of the trial court overruling the defendant's extraordinary motion for new trial was reversed. The ground of the extraordinary motion was that one of the jurors in the case was not impartial and had wilfully concealed this fact for the purpose of convicting the defendant and causing him to be hanged. In *Gholston* v. *Gholston,* 31 *Ga.* 625, 639, a divorce case, this court granted a new trial, on original motion, because the sheriff, under whose official charge the jury had been placed, informed the jury that " unless they should agree speedily, the judge would carry them with him to Elbert county, and that he was making preparations for that purpose." In the course of the opinion it was said: " It is an inflexible rule of law, that after a jury shall have been charged with a cause, having had the law and the evidence placed before them, by or under the supervision and direction of the court, all communication between them and the rest of mankind shall be suspended, except by permission of the court, until they shall have been discharged from the case. It is of the last importance that this rule be rigidly enforced, to the end that the administration of justice may be both pure and free from the suspicion of impurity. The ascertainment that some unauthorized communication had been had with the jury,

the nature and purport of which was unknown, ought to vitiate a verdict. How much more a known communication, calculated to intimidate jurors, to unsettle resolution, based upon fixed and well-considered opinion — to produce a conflict between a sense of duty and personal comfort, convenience, or interest. . . We can not be assured that the agreement subsequently made, but unattainable before, was not effected by this communication. The communication itself was clearly illegal; it was calculated to influence the jury, or some of them, and therefore the verdict is not free from taint." In *Obear* v. *Gray,* 68 *Ga.* 182 (original motion for new trial), it was said: "For a bailiff in charge of a jury to tell them, while considering the case and apparently finding it difficult to agree, that in his opinion the judge would keep them out a week or compel them to agree, was such practice as necessitates a new trial." In *Smith* v. *State,* 122 *Ga.* 154, 155 (50 S. E. 62), it was said: "The law is, in the trial of felony cases, that if any irregularity is shown in the conduct of the jury or the officers that have them in charge, the burden is upon the State to show that the accused is not injured by such misconduct. In this case, as before remarked, ten of the jurors depose that their minds were not influenced by any of the irregularities detailed above; but we think that for the State to fully carry the burden it must prove by all the jurors such facts as will tend to show to the court that no injury has been suffered by the accused. The record does not disclose why two of the jurors did not join with the others in making these affidavits. This, unexplained, might imply that they could not truthfully do so." See also *Cooper* v. *State,* 103 *Ga.* 65 (29 S. E. 439). In *Renfroe* v. *State,* 13 *Ga. App.* 655 (79 S. E. 758), a misdemeanor case, the Court of Appeals reversed the judgment denying a new trial, on original motion, upon the following state of facts: "The jury had had the case under consideration for about 18 or 20 hours, and, being unable to agree, called the sheriff and requested him to communicate with the court and ask the court either to recharge the jury, or to order a mistrial. The sheriff replied: 'Gentlemen, if it is a new charge you want, I am ready to go right down and submit it; but if it is a mistrial, I would feel embarrassed to do it, because I have heard the judge say that he was conscientiously opposed to mistrials in Wilcox county. But

I will submit it if you insist on it.' This was all that passed between the sheriff and the jury; and shortly afterward the jury returned a verdict of guilty." In that case each of the twelve jurors made affidavit to the effect that they were not influenced by the conduct of the sheriff to return a verdict of guilty; but the affidavits were not properly entitled in the cause. In *Smith* v. *Slate, 2 Ga. App.* 574 (59 S. E. 311), the judgment over-ruling an extraordinary motion for new trial, based upon the ground that one of the jurors who rendered the verdict finding the defendant guilty was disqualified by reason of his relationship to the prosecutor within the ninth degree, was reversed. As before noted, the case of *Doyal* v. *State, 73 Ga. 72,* was an extraordinary motion for new trial, and this court there recognized that the ground of the motion, to wit, the partiality of one of the jurors in the case and his wilful concealment of that fact for the purpose of carrying out his design of convicting the defendant and causing him to be hanged, was laid "in the very foundations of the purity of jury trial."

Can we in this case be assured that the communication of the deputy sheriff did not affect the verdict? It is true that seven of the jurors say that ten of the jurors had all along been in favor of a verdict of guilty without a recommendation to mercy. Two of the jurors had all along favored a verdict of guilty with such recommendation. The two jurors themselves say that the communication of the deputy sheriff did not influence their verdict. As pointed out, two of the jurors had died since the trial of the case, and before the hearing of the extraordinary motion for new trial. The three remaining jurors did not make affidavits. Their failure to do so is wholly unexplained. As was said in the case of *Smith* v. *State, 122 Ga.* (supra), the failure of these three jurors to make affidavits sustaining the verdict, thus unexplained, "might imply that they could not truthfully do so." The failure of the State in this case to furnish the affidavits of these three jurors, or to satisfactorily explain its inability to do so, is all the more significant because the State was allowed two months and a day in which to procure the affidavits of these jurors. Even if these jurors had all along voted for a verdict of guilty without recommendation, how can this court know that they were not ready to recommend to mercy at the time of the communication

to the jury by the deputy sheriff? And how can this court know that a change of sentiment upon the part of these three jurors would not have resulted in a change upon the part of the seven jurors who had all along voted with them for a verdict of guilty without recommendation. In so grave a case we are not permitted to speculate upon the probable effect of the communication made by the deputy sheriff to the jury. He had been requested by the jury to advise the court of the jury's inability to agree. The jurors, according to the undisputed affidavit of the deputy sheriff, were impatient and anxious to go home. Immediately after the communication to the jury, the jury did agree, and in our opinion the movant's case "fulfils the requirements of a meritorious extraordinary motion for new trial." We assume that the deputy sheriff was unauthorized by the court to make the statement as made by him to the jury; that, however, is not the question. The question reduces itself to this: The communication was highly improper; it was in fact made to the jury; the jury, theretofore unable to agree, thereafter "immediately agreed" upon a verdict. The State having failed to carry the burden thus placed upon it, of showing that the communication did not in fact prejudicially influence the jury selected for the trial of the case, the court erred in overruling the extraordinary motion for new trial.

*Judgment reversed. All the Justices concur, except*

BECK, P. J., and GILBERT, J., dissenting. The scrutiny will be closer by this court, and its power exercised with more hesitation, when the presiding judge has refused to interfere with the verdict, on the ground of the disqualification of a juror. In *Doyal's* case the judgment of the trial court overruling the defendant's extraordinary motion for new trial was reversed. The ground of the extraordinary motion was that one of the jurors in the case was not impartial and had wilfully concealed this fact for the purpose of carrying out his design of convicting the defendant and causing him to be hanged. It is clear that the ground of the motion in that case was "laid in the very foundations of the purity of jury trial." The juror had stated on his oath that his mind was impartial between the State and the accused. This statement was wilfully and designedly false. He desired to go on the jury for the purpose of convicting the

defendant of the offense of murder without a recommendation
to mercy. The ground of the motion in the present case com-
plains merely of an irregular and improper communication made
by the deputy sheriff to the jury. The deputy testifies that he
stated to the jury that the judge would keep them "locked up
until they did make a verdict." Under our decisions it must
be presumed that this statement to the jury unduly interfered
with the jury in their deliberations, to the injury of the plaintiff
in error. In all such cases, unless this court has been satisfied
from the counter-showing made that the complaining party has
not been injured, new trials have been granted. *Gholston* v.
*Gholston,* 31 *Ga.* 625; *Obear* v. *Gray,* 68 *Ga.* 182; *Shaw* v. *State,*
83 *Ga.* 92 (7 S. E. 768) ; *Styles* v. *State,* 129 *Ga.* 425, 433 (59 S.
E. 249, 12 Ann. Cas. 176) ; *Smith* v. *State,* 122 *Ga.* 154 (50 S.
E. 62) ; *Suple* v. *State,* 133 *Ga.* 601 (66 S. E. 919) ; *Griffin* v.
*State, 5 Ga.. App.* 43 (62 S. E. 683) ; *Renfroe* v. *State,* 13 *Ga.
App.* 655 (79 S. E. 758). It is here insisted that the irregu-
lar, improper, and illegal communication by the deputy sher-
iff to the jury is not fully explained; that is to say, it is not
affirmatively made to appear to the court that the irregularity
complained of resulted in no injury to the accused. It ap-
pears, without dispute, that the jury trying the accused had
all along been in favor of a verdict of guilty; ten of the jurors
insisting upon a verdict of guilty without recommendation;
two of the jurors insisting upon a verdict of guilty with recom-
mendation. The two jurors who all along favored a verdict of
guilty with a recommendation joined in the affidavit. They state
that in making their verdict they were wholly uninfluenced by
the statement of the deputy sheriff, and that they arrived at their
verdict from a consideration of the evidence alone. Two of the
jurors had since died, and the State did not offer to explain the
failure of the three remaining jurors to make affidavits. While
it would have been better to have procured the affidavits of the
three remaining jurors, the judge was authorized to find, from
the affidavits submitted, that the improper communication of the
deputy sheriff did not affect these jurors in their deliberations.
This being an extraordinary motion for new trial, we are clearly
of the opinion that this court should not interfere with the judg-
ment of the trial court in denying the new trial.