306 Ga. 878
FINAL COPY

S19A0554.  MITCHUM v. THE STATE.

MELTON, Chief Justice.

This case concerns a challenge to a criminal conviction raised in an extraordinary motion for new trial. Specifically, we address whether a post-appeal challenge to a criminal conviction based on alleged improper communications with the jury that occurred during the defendant's trial but that were not brought to the defendant's attention until years later may be properly pursued through an extraordinary motion for new trial, or whether such claims must be pursued exclusively through a petition for a writ of habeas corpus. As explained more fully below, because the claims of improper communications in this case involve the alleged deprivation of the defendant's constitutional rights, and because habeas corpus provides an adequate remedy for addressing those claims, the claims could be pursued only through habeas corpus. Accordingly, an extraordinary motion for new trial was not the

proper vehicle through which the defendant could pursue his claims, and the trial court should have dismissed the motion. However, because the trial court denied the motion instead of dismissing it, we vacate the trial court's decision and remand the case to the trial court for the purpose of entering an order dismissing the extraordinary motion for new trial.

By way of background, following an October 26-27, 1999 jury trial, Robert Earl Mitchum was convicted of felony murder, and his conviction was upheld by this Court on appeal. See *Mitchum v. State*, 274 Ga. 75 (548 SE2d 286) (2001). Fifteen years later, on February 8, 2016, Mitchum filed a pro se extraordinary motion for new trial based upon alleged improper communications with the jury. On April 15, 2016, Mitchum supplemented his extraordinary motion with a pro se "Affidavit of Truth," an "Enumeration of Errors" document, and affidavits from Bobby Dean Collins and Judy Ann Collins, two individuals who were present at his trial. The Collinses averred in their affidavits that, following the October 5, 1999 voir dire proceedings connected with Mitchum's criminal trial,

they witnessed the trial judge, the prosecutor on the case, Mitchum's defense attorney, and a senior superior court judge of the county eating dinner with the twelve jurors selected for Mitchum's case, as well as two alternate jurors, at a local restaurant. The Collinses also claimed that the trial judge and the senior superior court judge ate lunch with the trial jurors at the same local restaurant on October 27, 1999, after the jurors had begun their deliberations. Without holding a hearing, the trial court denied the extraordinary motion on September 6, 2018. This Court granted Mitchum's application for a discretionary appeal to examine the propriety of the trial court's ruling.

1. Our analysis begins with an examination of the range of issues that may be properly raised in the two types of post-conviction relief that are implicated in this case — an extraordinary motion for a new trial and a petition for a writ of habeas corpus.[1]

---

[1] We need not examine a third type of post-conviction relief, a motion in arrest of judgment, as such a motion may be pursued only where there is a "[non-amendable] defect . . . which appears on the face of the record or pleadings." OCGA § 17-9-61 (a). This is not such a case. And, in any event, even if it were such a case, a motion in arrest of judgment "must be made during the

(a) *Extraordinary Motions for New Trial*

Extraordinary motions for new trial may be filed outside of the standard 30-day time period in which motions for new trial must generally be filed following the entry of a judgment. OCGA § 5-5-40 (a) ("All motions for new trial, *except in extraordinary cases*, shall be made within 30 days of the entry of the judgment on the verdict or entry of the judgment where the case was tried without a jury.") (emphasis supplied). However, "some good reason must be shown why the motion [for new trial] was not made during [the 30-day] period [from the entry of judgment], which reason shall be judged by the [trial] court." OCGA § 5-5-41 (a). After the 30-day period from the entry of a judgment has expired, "no motion for a new trial from the . . . judgment shall be made or received unless the same is an extraordinary motion or case; and only one such extraordinary motion shall be made or allowed." Id. at (b).

Because they are an extraordinary remedy, extraordinary

---

term at which the judgment was obtained." Id. at (b). Mitchum's motion was filed 15 years after his conviction.

4

motions for new trial "are not favored" in either civil or criminal cases. *Davis v. State*, 283 Ga. 438, 440 (2) (660 SE2d 354) (2008) ("Extraordinary motions for new trial are not favored, and a stricter rule is applied to an extraordinary motion for a new trial based on the ground of newly available evidence than to an ordinary motion on that ground.") (citation and punctuation omitted); *Ford Motor Co. v. Conley*, 294 Ga. 530, 539 (2) (757 SE2d 20) (2014) ("Untimely efforts to obtain a new trial have long been disfavored by the law because they work to undermine the finality of judgments and the reliance that litigants are normally entitled to place on final decisions rendered in our courts."). And,

> [e]xcept for the requirement in OCGA § 5-5-41 (a) that the moving party show a "good reason" for not seeking a new trial within 30 days of the judgment, the requirements for extraordinary motions for new trial are not specified by statute but instead are the product of case law that draws on the statutory requirements for ordinary motions for new trial.

*Ford Motor Co.*, supra, 294 Ga. at 540 (2). In this sense, the judicially created parameters of an extraordinary motion for a new trial are akin to other "extraordinary remedies" that allow an individual to

5

seek redress of wrongs where no other adequate remedy exists. See, e.g., *Merchant Law Firm, P.C. v. Emerson*, 301 Ga. 609, 611 (1) (800 SE2d 557) (2017) ("Mandamus is an *extraordinary remedy* to compel a public officer to perform a required duty when there is *no other adequate legal remedy*.") (citations and punctuation omitted; emphasis supplied). An extraordinary motion for new trial is an extraordinary remedy that provides a means for a defendant to seek a new trial outside of the ordinary 30-day period when extraordinary circumstances exist.

In this regard, our prior case law has established that the discovery of new evidence that would be admissible at the defendant's criminal trial and that materially affects the question of the defendant's guilt or innocence is a proper subject of an extraordinary motion for new trial. See *Dick v. State*, 248 Ga. 898, 899 (287 SE2d 11) (1982). See also *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980) (outlining the six factors that must be satisfied in order for new trial to be granted based on newly discovered evidence, and concluding that, "[i]mplicit in the[ ] six

6

requirements [for granting the extraordinary motion] is that the newly discovered evidence must be admissible as evidence [at the defendant's trial]"); *Bush v. Chappell*, 225 Ga. 659 (2) (171 SE2d 128) (1969) (where the matter involves the discovery of new evidence that affects the question of a defendant's guilt or innocence, the defendant's remedy lies in an extraordinary motion for new trial and not in habeas).[2]

Here, Mitchum contends that the "newly discovered evidence" in this case involves improper communications between judges, lawyers, and jurors that occurred on two occasions at a restaurant outside of the courthouse. However, despite the fact that such allegations might be quite disturbing, if true, these allegations alone do not speak to Mitchum's guilt or innocence. See, e.g., *Ford Motor*

---

[2] We note in this respect that a claim of actual innocence based on newly discovered evidence traditionally may be raised only in a motion for new trial or an extraordinary motion for new trial. See, e.g., *Wimberly v. State*, 302 Ga. 321 (3) (806 SE2d 599) (2017); *State v. Hill*, 295 Ga. 716 (763 SE2d 675) (2014). Traditionally, a free-standing actual-innocence claim has not been cognizable as a constitutional claim in habeas corpus, although that remains an unsettled area of the law. See generally *Herrera v. Collins*, 506 U. S. 390, 398-417 (113 SCt 853, 122 LE2d 203) (1993) (discussing these claims and explaining that they have normally been raised in new trial motions rather than in habeas corpus).

*Co.*, supra, 294 Ga. at 540 (2) (extraordinary motion for new trial was not based on "newly discovered evidence" where it did not concern "evidence related to witnesses and exhibits that allegedly should have been considered by the jury in reaching its verdict"). Accordingly, Mitchum's claim in this case is not properly framed as one that involves "newly discovered evidence" of guilt or innocence as that phrase has been interpreted in cases such as *Timberlake* and *Davis*.

However, in certain contexts, "the late filing of a motion for new trial may also be predicated on circumstances other than newly discovered evidence" that affects the defendant's guilt or innocence. (Citation and punctuation omitted.) *Fowler Properties v. Dowland*, 282 Ga. 76, 79 (3) (646 SE2d 197) (2007). See also *Ford Motor Co.*, supra, 294 Ga. at 540-541 (2) ("Any party making an extraordinary motion for new trial [on grounds other than newly discovered evidence of guilt or innocence] must meet two fundamental requirements. First . . . the moving party [must] show a 'good reason' why the motion was not filed during the 30-day period after the

8

entry of judgment. . . . Second . . . the moving party must show that the error alleged as the basis for the motion was materially harmful."). In this regard, this Court has in the distant past considered the merits of a claim in an extraordinary motion for new trial involving alleged improper communications with the jury during a defendant's criminal trial. See *Harris v. State*, 150 Ga. 680, 680-685 (104 SE 902) (1920) (where bailiff informed jury after two days of deliberations that "the judge would keep them locked up until they did make a verdict," and jury came to guilty verdict a few minutes later, this Court concluded that the defendant had met "the requirements [for presenting] a meritorious extraordinary motion for new trial") (punctuation omitted). See also *King v. State*, 174 Ga. 432, 436 (1) (163 SE 168) (1932) (noting, in dicta citing *Harris*, that "[a] new trial may be granted on an extraordinary motion based upon the ground of improper communication with the jury"). And, claims of improper jury communications may implicate a defendant's constitutional right to trial by a fair and impartial jury. *Parker v. Gladden*, 385 U. S. 363, 364 (87 SCt 468, 17 LE2d 420)

9

(1966).

Given the lack of express statutory limits placed on the range of issues that may be the proper subject of an extraordinary motion for new trial, our older case law cited above might support the conclusion that issues involving the deprivation of a defendant's constitutional rights against improper jury communications may be properly raised through an extraordinary motion for new trial as long as the defendant can show a "good reason" why he or she did not file a timely motion for new trial raising those grounds. However, this does not end our inquiry, because, as explained more fully below, the legal landscape in Georgia changed significantly with the passage of this state's Habeas Corpus Act of 1967. See Ga. L. 1967, p. 835, codified as amended at OCGA § 9-14-40 et seq.

(b) *Petitions for a Writ of Habeas Corpus*

From the earliest days of the writ of habeas corpus in Georgia courts until 1967, post-conviction habeas corpus relief was available in far fewer circumstances than after the passage of the 1967 Habeas Corpus Act. See generally Donald E. Wilkes, Jr., A New Role

for an Ancient Writ: Postconviction Habeas Corpus Relief in Georgia (Part I), 8 Ga. L. Rev. 313 (1974) (tracing the origins and history of the writ of habeas corpus in Georgia as a pre-conviction remedy from the late 1700s until post-conviction habeas relief also became available in 1893, and through the passage of the Habeas Corpus Act of 1967). Indeed, "[f]rom 1893 when post[-]conviction habeas corpus relief was first granted [in Georgia] until 1967 when a new Georgia habeas corpus act was passed, post[-]conviction habeas relief was available in Georgia only in a very limited number of situations." Id. at 336 (B). Specifically,

> [p]ost[-]conviction habeas relief had been available in Georgia only on grounds of lack of jurisdiction. Unless the judgment of conviction or the sentence was void for want of subject matter or personal jurisdiction, the writ would be denied. While denial of counsel could render a conviction void, a strict doctrine of waiver of constitutional rights prevented the deprivation of any other right from constituting grounds for relief.

Donald E. Wilkes, Jr., A New Role for an Ancient Writ: Postconviction Habeas Corpus Relief in Georgia (Part II), 9 Ga. L. Rev. 13, 55 (C) (1) (1974).

However, this restrictive landscape changed in 1967 with the passage of the Habeas Corpus Act, which had the stated purpose of expanding "the scope of [Georgia's] state habeas corpus" to bring it more in line with recently developed federal habeas corpus standards, which allowed prisoners to challenge their confinement based on alleged deprivations of their constitutional rights. See OCGA § 9-14-40. See also OCGA § 9-14-42 (a) ("Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this state may institute a proceeding under this article."). We previously stated that "[h]abeas corpus is the *exclusive* post-appeal procedure available to a criminal defendant who asserts the denial of a constitutional right. OCGA § 9-14-41." (Emphasis supplied.) *State v. Smith*, 276 Ga. 14, 15 (1) (573 SE2d 64) (2002), disapproved on other grounds by *Wilkes v. Terry*, 290 Ga. 54, 55-56 (717 SE2d 644) (2011). However, we did not decide definitively in *Smith* that an extraordinary motion for new trial

12

could *not* be used as an alternative proceeding through which a defendant could raise a post-appeal constitutional claim. Indeed, in *Washington v. Hopson*, 299 Ga. 358, 362 (2) n.2 (788 SE2d 362) (2016), we acknowledged the statement that we made in *Smith* about habeas corpus being the exclusive remedy for constitutional deprivation claims, but we also pointed out that

> [b]ecause . . . the habeas court erred in granting relief [to the petitioner] for a different reason [in the case], we [did not] need [to] decide whether [the petitioner] could have (and thus should have) raised his constitutional claim in his extraordinary motion for new trial. See *McCorquodale v. State*, 242 Ga. 507, 507 n.1 (249 SE2d 211) (1978) (rejecting on the merits the defendant's claims that his constitutional rights to due process and a fair trial were violated, expressly leaving open the issue of whether an extraordinary motion for new trial was an appropriate proceeding to raise such constitutional claims).

We now address the issue that we did not decide in *Washington* relating to the propriety of bringing post-conviction constitutional claims (following one's appeal) through an extraordinary motion for new trial rather than through a habeas corpus proceeding.

   (c) *Scope of Claims Covered by Extraordinary Motions for New Trial*

As mentioned previously, an extraordinary motion for new trial is a remedy that creates a means of redressing materially harmful errors in extraordinary circumstances. As an "extraordinary remedy" that is akin to others that are categorized as such, it is not available where an adequate alternative remedy exists. See, e.g., *Merchant Law Firm*, supra, 301 Ga. at 611 (1); *Humphrey v. Owens*, 289 Ga. 721, 722 (715 SE2d 119) (2011) ("[M]andamus is not the proper vehicle for obtaining post-appeal review of a sentence imposed by a state court. . . . [The defendant] has access to the remedy of habeas corpus."); *A. A. Parker Produce, Inc. v. Mercer*, 221 Ga. 449, 451 (145 SE2d 237) (1965) ("The *extraordinary remedy* of receiver does not lie in favor of one who has an adequate remedy at law."); *Ledbetter v. Callaway*, 211 Ga. 607, 610 (87 SE2d 317) (1955) ("[T]he *extraordinary remedy* of injunction does not lie in favor of one who has an adequate remedy at law.") (citations omitted; emphasis supplied). Cf. OCGA § 9-4-2 (c) (General Assembly specifically provided that "[r]elief by declaratory judgment shall be available, *notwithstanding the fact that the complaining party has any other*

*adequate legal or equitable remedy or remedies.*") (emphasis supplied). In this regard, when the General Assembly in 1967 expanded the scope of matters that could be addressed through habeas corpus to include constitutional deprivation claims, an adequate statutory remedy was created to address those constitutional claims. This creation of a comprehensive statutory means through which constitutional (and only constitutional) claims could be pursued necessarily meant that, after the passage of the Habeas Corpus Act of 1967, it was no longer necessary for one to resort to an extraordinary motion for new trial in order to assert constitutional deprivation claims. The extraordinary-motion-for-new-trial remedy, which had been judicially construed to allow for constitutional claims to be raised, became narrower, by enactment of the Habeas Corpus Act of 1967, to exclude such claims. See *Glinton v. And R, Inc.*, 271 Ga. 864, 866-867 (B) (524 SE2d 481) (1999) ("Where statutes are in conflict, later statutes prevail over earlier statutes and specific statutes govern over more general

15

statutes.") (citation omitted).[3] Thus, at least since 1967, if a prisoner convicted in a Georgia court seeks, post-appeal, to assert the denial of a constitutional right through an extraordinary motion for new trial rather than a petition for a writ of habeas corpus, such claim is not properly raised.[4]

---

[3] The fact that certain claims cognizable in habeas corpus could be barred by the statute of limitation contained in OCGA § 9-14-42 (c) (four-year statute of limitation for felonies) does not make habeas corpus any less of an adequate remedy. See *Humphrey*, supra, 289 Ga. at 722. ("[M]andamus is not the proper vehicle for obtaining post-appeal review of a sentence imposed by a state court. . . . [The defendant] has access to the remedy of habeas corpus. That the utilization of such remedy may be barred by the statute of limitation . . . does not render it inadequate.") (citations omitted). An adequate legal remedy is not made inadequate simply because a claim should have been but was not brought within a certain time period fixed by law. Id. The remedy need only be "adequate," meaning that the alternative remedy is "as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." (Citation and punctuation omitted.) *Sherrer v. Hale*, 248 Ga. 793, 797-798 (2) (285 SE2d 714) (1982). Furthermore, OCGA § 9-14-42 (c) (4) provides that the statute of limitation is tolled until "[t]he date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence." Accordingly, a constitutional claim based on late-discovered improper communications with the jury could be cognizable in habeas even if discovered after the expiration of the limitations period, provided that the facts supporting the claim could not have been discovered through the exercise of due diligence prior to that time.

[4] We note that neither *Harris*, supra, nor *King*, supra, has been cited by this Court after 1967 for the proposition that an extraordinary motion for new trial may be based on constitutional claims involving improper communications with the jury. On the other hand, we have considered improper jury communication claims raised as alleged constitutional violations in habeas petitions. See, e.g., *Greer v. Thompson*, 281 Ga. 419 (637 SE2d 698)

Based on the foregoing, even if extraordinary motions for new trial could have properly reached constitutional deprivation claims as a matter of our decisional law prior to 1967, they could no longer do so after the passage of the Habeas Corpus Act. Thus, in the present case, to the extent that Mitchum's claims do not involve matters of alleged constitutional deprivation that would be governed by habeas corpus proceedings, an extraordinary motion for new trial could be available as a remedy. However, constitutional matters that are exclusively governed by the adequate remedy of habeas corpus cannot be pursued through such a motion. With these parameters in mind, we turn to the specific claims presented by Mitchum in this case.

2. The record reveals that Mitchum's two-page extraordinary motion for new trial and his accompanying affidavit and enumeration of errors are couched in terms of alleged constitutional deprivations. Specifically, Mitchum contended below that he was

---

(2006) (evaluating improper juror communications claim in the context of ineffective assistance of counsel); *Turpin v. Todd*, 268 Ga. 820, 823 (1) (c) (493 SE2d 900) (1997); *Perry v. Holland*, 228 Ga. 660 (187 SE2d 286) (1972).

17

denied "due process," his right to an impartial judge and unbiased jury, and his right to "conflict-free defense counsel," based on incidents of improper communications between the judge presiding at his trial, a senior superior court judge, the prosecutor, his defense attorney, and the jurors involved in his trial. He further contended in his motion that he was asserting "constitutionally [non-waivable] grounds" as a basis for relief.

Mitchum's claims regarding improper communications with the jury thus appear to be ones that involve the alleged deprivation of Mitchum's constitutional rights. As the United States Supreme Court has held, in some circumstances, improper communications with the jury during a defendant's trial and outside of the defendant's presence

> are controlled by the command of the Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment. It guarantees that the accused shall enjoy the right to a . . . trial, by an impartial jury and be confronted with the witnesses against him. [T]he "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination,

18

and of counsel. . . . [Improper communications occurred in this case where] an officer of the State [made statements to the jury that were] not subjected to confrontation, cross-examination or other safeguards guaranteed to the petitioner[, but involved] "private talk," tending to reach the jury by "outside influence."

(Citations and punctuation omitted.) *Parker*, supra, 385 U. S. at 364. See also *Turner v. Louisiana*, 379 U. S. 466, 468 (85 SCt 546, 13 LE2d 424) (1965) (actions of deputy sheriffs who were witnesses in defendant's case violated defendant's right to due process where "[t]he deputies ate with [the jurors], conversed with them, and did errands for them" while the jurors were sequestered). This Court has also noted that other constitutional concerns can be implicated in matters involving improper communications with the jury. See *Turpin v. Todd*, 268 Ga. 820, 823 (1) (c) (493 SE2d 900) (1997) (noting in habeas corpus action involving alleged improper communications with the jury that "improper statements by a bailiff to a jury violate[ ] the defendant's right to a fair trial. . . [and] due process concerns are raised when communications from a bailiff to a jury are made outside the presence of the defendant and his

19

counsel"); *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998) (Ex parte communications between the trial judge and the jurors during the defendant's trial were improper, because, "[w]ithin the Georgia constitutional right to the courts is a criminal defendant's 'right to be *present*, and see and hear, *all the proceedings* which are had against him on the trial before the Court.' [Cits.] A colloquy between the trial judge and the jury is a part of the proceedings to which the defendant and counsel are entitled to be present.") (emphasis in original).

Despite wording some of his claims in terms of "judicial misconduct" and "fraud," all of Mitchum's specific claims in his extraordinary motion for new trial speak to the alleged deprivation of his constitutional rights due to improper communications that impacted his rights to a fair and impartial jury and to due process. For this reason, Mitchum's claims can only be properly addressed in habeas proceedings involving allegations of constitutional deprivations.[5] And, to the extent that Mitchum's claim of being

---

[5] This is not to say that a case involving alleged misconduct of state

20

denied "conflict-free defense counsel" implicates the alleged ineffectiveness of his trial counsel for failing to tell him about the alleged improper communications with the jury in which the defense attorney himself participated during a lunch break following voir dire, that claim also presents a constitutional matter that is appropriately reviewed only in habeas corpus. See, e.g., *Wright v. Hall*, 281 Ga. 318 (2) (638 SE2d 270) (2006).[6] Accordingly, because habeas corpus provided an adequate remedy, an extraordinary motion for new trial was not the appropriate vehicle for Mitchum to pursue his claims, and the trial court should have dismissed the motion. See *Bridges v. State*, 279 Ga. 351 (10) (613 SE2d 621) (2005) (trial court properly dismissed extraordinary motion for new trial where it lacked jurisdiction to consider the motion).

---

officials or some form of improper communications with the jury could *never* involve issues other than constitutional ones. Indeed, there could, for example, be allegations of misconduct in a case based on alleged violations of state statutes rather than constitutional provisions. However, this is not such a case.

[6] Mitchum raised grounds of ineffective assistance of his trial counsel in his direct appeal to this Court. However, those claims did not involve any allegation that his trial counsel had engaged in improper communications with the jury. See *Mitchum*, supra, 274 Ga. at 76-77 (2).

21

We therefore vacate the trial court's decision to deny Mitchum's extraordinary motion for a new trial and remand this case with direction that the extraordinary motion for new trial be dismissed. To the extent that the pre-1967 cases involving extraordinary motions for new trial based on improper communications with the jury can be read to support the proposition that the scope of such motions may reach constitutional claims that may be raised in habeas corpus proceedings, they have been superseded by the passage of the 1967 Habeas Corpus Act. See *Harris*, supra, 150 Ga. at 680; *King*, supra, 174 Ga. at 436.

*Judgment vacated and case remanded with direction. All the Justices concur.*

DECIDED OCTOBER 7, 2019.

Extraordinary motion for new trial. Bryan Superior Court. Before Judge Russell.

*Sarah L. Gerwig-Moore, J. Scott Key, Mathew Gilbo, Meagan Hurley, Ezra A. Gantt, Andrea L. Clark, Gabrielle L. Biggs*, for appellant.

*J. Thomas Durden, Jr., District Attorney, Billy J. Nelson, Jr., Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.