308 Ga. 387
FINAL COPY

S19A1506. WATKINS v. BALLINGER.

BOGGS, Justice.

We granted Joseph Samuel Watkins' application for a certificate of probable cause to appeal an order of the Superior Court of Walker County dismissing Watkins' second petition for writ of habeas corpus. The issue presented is whether the habeas court properly dismissed Watkins' petition as both untimely and successive. We conclude that the habeas court erred in dismissing Watkins' petition and reverse and remand for further proceedings.

After a 2001 jury trial, Watkins was convicted of felony murder and related offenses in the shooting death of Isaac Dawkins. This Court affirmed his convictions in *Watkins v. State*, 276 Ga. 578 (581 SE2d 23) (2003). Watkins' first petition for habeas corpus was denied, and this Court denied his application for a certificate of probable cause to appeal. See *Watkins v. Martin*, Case No. S12H0816 (decided Oct. 15, 2012). Watkins' federal habeas petition

was denied in an unpublished order by the United States District Court for the Northern District of Georgia, see *Watkins v. Crickmar*, Case No. 4:12-cv-00298 (decided Feb. 25, 2013), and the United States Court of Appeals for the Eleventh Circuit denied his motion for a certificate of appealability. See *Watkins v. Warden*, Case No. 13-11292-F (decided June 24, 2013).

In 2017, Watkins filed this second state habeas petition, raising claims of juror misconduct and concealment by the State of exculpatory evidence. First, he alleged that a juror, contrary to the trial court's explicit instructions not to visit the scene or conduct timed-drive experiments, conducted just such an experiment. Second, he alleged that the State failed to reveal exculpatory evidence to him and allowed a witness to testify that such evidence did not exist. The warden filed a motion to dismiss the petition as untimely and successive, asserting that "that motion need[ed] to be heard and disposed of before any merits . . . consideration can be done in this matter."

After a hearing on the motion to dismiss, at which no witnesses

were called and the parties agreed to proceed on the record and argument alone, the habeas court dismissed Watkins' petition as both untimely filed under OCGA § 9-14-42 (c) (4) and successive under OCGA § 9-14-51. In support of its conclusions, the habeas court determined that "[p]etitioner could reasonably have raised his current claims in his original petition through speaking with the juror who allegedly committed misconduct and by obtaining records through the Open Records Act" to discover the allegedly exculpatory evidence. We granted Watkins' application for a certificate of probable cause to appeal, posing the following question: "Did the habeas court err in denying petitioner's juror misconduct claim on the basis that the claim was untimely and successive?"

OCGA § 9-14-42 (c), enacted in 2004,[1] provides a four-year limitation period on petitions for habeas corpus from felony convictions, with four potential dates from which the time may begin to run. See OCGA § 9-14-42 (c) (1)-(4). Paragraph (c) (4) provides that the limitation period begins at "[t]he date on which the facts

---

[1] See Ga. L. 2004, p. 917, § 1.

supporting the claims presented could have been discovered through the exercise of due diligence." OCGA § 9-14-42 (c) (4). See *Mitchum v. State*, 306 Ga. 878, 885 (1) n.3 (c) (834 SE2d 65) (2019). Other procedural provisions of the Habeas Corpus Act contain similar language. For example, OCGA § 9-14-48 (e) provides, with respect to habeas corpus petitions challenging "convictions had before July 1, 2004," that if the respondent seeks dismissal on the basis of prejudicial delay, the petitioner may avoid dismissal by showing "by a preponderance of the evidence that [the petition] is based on grounds of which he or she could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the respondent occurred." See *Flint v. State*, 288 Ga. 39, 39 n.1 (701 SE2d 174) (2010). Similarly, OCGA § 9-14-51 provides:

> All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

See *Turpin v. Todd*, 268 Ga. 820, 825-826 (2) (a) (493 SE2d 900) (1997) (looking to analogous federal law and holding that overcoming procedural bar of OCGA § 9-14-51 requires showing that factual or legal basis for claim was "not reasonably available" or "not readily discoverable" to petitioner (punctuation omitted)).

The warden in her brief urges that we not consider cases construing this similar language by pointing out that those decisions address procedural provisions of the Habeas Corpus Act not directly at issue in this appeals, and we therefore should not rely upon those holdings here. But we cannot interpret OCGA § 9-14-42 (c) (4), OCGA § 9-14-48 (e), or OCGA § 9-14-51 individually or in a vacuum. Rather, to determine the meaning of "due diligence," "reasonably available," and "reasonably discoverable" in the context of those Code sections, we look to the overall context of the statutory habeas corpus provisions, see *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ([W]e must view the statutory text in the context in which it appears."). Read together and in context, the Code

sections require "due diligence" or "reasonable diligence" in discovering the underlying facts, and whether those facts were "not reasonably available" or "could not reasonably have been raised." See Black's Law Dictionary (11th ed. 2019) (defining "due diligence" in part as, "The diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation. — Also termed reasonable diligence; common diligence.").

So viewed, consideration of "due diligence," "reasonable diligence," or whether facts were "reasonably available" involves the same basic analysis: whether a petitioner has acted in a reasonable and diligent manner to uncover the legal or factual grounds upon which he or she seeks to rely in an allegedly untimely or successive petition. Indeed, this Court's leading cases rely on one another even when interpreting different sections of the Code governing habeas corpus petitions. For example, in *Turpin v. Todd*, we relied on *Smith v. Zant*, 250 Ga. 645 (301 SE2d 32) (1983), a case involving a second habeas petition under OCGA § 9-14-51, to analyze a question of

procedural default under OCGA § 9-14-48 (d). See *Turpin*, 268 Ga. at 824-828 (2) (a). Similarly, in *Gibson v. Head*, 282 Ga. 156 (646 SE2d 257) (2007), we considered *Turpin* in analyzing whether a second habeas petition was successive under OCGA § 9-14-51. See *Gibson*, 282 Ga. at 156-158 (1).

We now address Watkins' specific claims, considering whether the habeas court erred in denying Watkins' claims of juror misconduct and concealment of evidence on the basis that they were untimely and successive. We conclude that the habeas court erred in finding that these claims were barred because they could reasonably have been raised in the original petition and could have been discovered earlier with the reasonable exercise of due diligence. Rather, it appears from Watkins' petition and the attached affidavits that he has sufficiently alleged that he acted in a reasonable and diligent manner to uncover the grounds upon which he seeks to rely.

1. Watkins' juror misconduct claim is supported by a juror's affidavit, incorporated by reference in his petition. The juror

testified that after one day of deliberations, she and one other juror were "leaning towards acquittal" based largely on the cell phone evidence presented by the defense. At trial, Watkins argued that the cell phone evidence showed that he could not have reached the scene of the crime at the time the murder was committed. The State offered other cell phone evidence, contending that its evidence placed Watkins closer to the scene. According to the juror's affidavit, she was familiar with the area, and "wondered if it could have been possible" for Watkins to reach the crime scene in time. She recalled that one other juror "voting to acquit felt the same way." After the jury was dismissed for the day, the juror "found [her]self driving in the area," and she drove the route Watkins was alleged to have driven and timed it. As a result, she concluded that "it may have been possible" for Watkins to drive to the scene in time. The juror concluded that "this made reasonable doubt less likely, and the following Monday I voted to convict."[2]

---

[2] In her affidavit, the juror does not state that she communicated the results of her experiment to the jury or to any other individual juror. Watkins'

The juror further stated that in 2016, she was interviewed by an investigative reporter who was working on a story about the case, and the juror told the reporter about her experiences on the jury, including her timed drive. In 2017, the juror spoke with the Georgia Innocence Project and the attorneys of record on this appeal. She added that no other attorneys or investigators had contacted her.

Presented with this evidence, the habeas court concluded that Watkins "with the exercise of due diligence, could have spoken with this juror once his trial was over in 2001 to determine whether any juror misconduct had occurred." But we conclude that the exercise of due diligence does not require so extensive an investigation, particularly under the circumstances presented here.

We first note that, before the revision of the Georgia Evidence Code, jurors generally were not permitted to impeach their verdict. See former OCGA § 17-9-41. An exception existed, however, when a

_____

habeas counsel asserts, however, that "Petitioner has reasonable grounds to believe that the juror conveyed the results of her investigation to the other holdout juror, who subsequently changed his vote as well, resulting in the Petitioner's conviction." As we explain below, resolution of this issue must await a hearing on the merits of petitioner's claims.

juror improperly conducted extra-judicial experiments or site visits, and "there [was] a reasonable possibility that the improper evidence collected by jurors contributed to the conviction." *Bobo v. State*, 254 Ga. 146 (1) (327 SE2d 208) (1985).[3]  In *Bobo*, decided on direct appeal, two jurors testified on appellant's motion for new trial that they visited the scene of the crime in order to observe distances and lighting conditions, and that they communicated their observations to the rest of the jury. See id. at 147 (1). This Court concluded that the record created "at least a reasonable possibility that the reports by jurors . . . contributed to the conviction, and that the verdict must therefore be deemed inherently lacking in due process," and reversal therefore was required. Id. Similarly, in the unrelated decision of *Watkins v. State*, 237 Ga. 678 (229 SE2d 465) (1976), another direct appeal, two jurors conducted a timed-drive experiment quite similar to that undertaken by the juror in the instant case to explain "a critical time lapse" in the State's evidence. Id. at 683. This Court

---

[3] The relevant provision of the current Evidence Code, OCGA § 24-6-606 (b), permits a juror to testify regarding "whether extraneous prejudicial information was improperly brought to the juror's attention."

observed that jurors who make unauthorized visits to the crime scene and then communicate their findings to the rest of the jury "bec[o]me, in a real sense, unsworn witnesses against the appellant in violation of the Sixth Amendment." Id. at 684.

In *Turpin*, 268 Ga. at 823 (1) (c), we applied *Watkins* in analyzing a habeas petition that alleged juror misconduct in improper communications with a bailiff. Importantly, however, we declined to address the merits of that claim, pending resolution of the issue of procedural default on remand. Similarly, in *Mitchum*, we confined our analysis to the allegations of Mitchum's extraordinary motion for new trial, observing:

> OCGA § 9-14-42 (c) (4) provides that the statute of limitation is tolled until "[t]he date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence." Accordingly, a constitutional claim based on late-discovered improper communications with the jury *could be* cognizable in habeas even if discovered after the expiration of the limitations period, provided that the facts supporting the claim could not have been discovered through the exercise of due diligence prior to that time.

(Emphasis supplied.) 306 Ga. at 885 (1) (c) n.3.[4]

Therefore, in reviewing the grant of the warden's motion to dismiss based on the limited record before us, we decline to address any question of cognizability or the merits of Watkins' claims at this phase of the litigation. We consider only whether Watkins has established, sufficiently to survive a motion to dismiss, that the asserted facts could not have come to light sooner in the exercise of reasonable or due diligence.

Here, the trial court specifically instructed the jury not to visit the scene or attempt a timed-drive experiment:

> COURT: I guess I really ought to also instruct you on this. Any of you live down 27, 411 and have to go in that direction toward Floyd College to go home or anything? [Hands raised.] Listen, don't go measuring distances or stopping by the scene and investigating on your own and this is for all of the jurors. Don't go out there and start measuring things off with your odometer. You have to base your decision in any trial like this on what you hear in the courtroom from the witness stand and you can't go investigating anything on your own. So please don't do

---

[4] *Mitchum* involved not the merits of Mitchum's claims, but whether those claims were properly addressed in a petition for habeas corpus or in an extraordinary motion for new trial. We concluded that habeas corpus was the appropriate remedy in that case and directed that Mitchum's extraordinary motion for new trial be dismissed. 306 Ga. at 887 (2).

that.

"Qualified jurors under oath are presumed to follow the instructions of the trial court." (Citation and punctuation omitted.) *Favors v. State*, 305 Ga. 366, 370 (3) (825 SE2d 164) (2019). Watkins' counsel were entitled, in the absence of *any* indication of irregularity, to rely upon the presumption that the jurors would adhere to the very specific instruction of the trial court and not conduct independent and unauthorized timed-drive experiments. See *Gibson*, 282 Ga. at 157-158 (1) (even though conflict of interest was matter of public record, petitioner entitled to presume that trial counsel had no conflict in light of counsel's duty to disclose conflict).

We also consider whether any evidence in the record suggests or indicates any irregularity, so as to alert Watkins' counsel that jury misconduct occurred. See *Turpin*, 268 Ga. at 827 (2) (a) ("[T]he record reveals no other evidence that would have alerted trial or appellate counsel to the fact that jury misconduct or improper jury deliberations occurred at trial."). Here, Watkins' petition attaches and incorporates by reference affidavits from Watkins' trial and

appellate counsel, which all state that "nothing . . . alerted [them] to the possibility that a juror might have conducted an extrajudicial test." In light of the absence of any indication of juror misconduct in the limited record before this Court on the State's motion to dismiss, and the trial court's specific charge to the jury not to conduct any driving experiments, nothing in the record indicates that a juror had violated those clear instructions and conducted the very timed-drive test forbidden by the trial court's instruction.

Finally, in the absence of any indication of irregularity, due diligence did not require Watkins to seek out trial jurors in order to uncover any possible misconduct. The contrary view would require convicted defendants, or their counsel, family, or friends on their behalf, to interview in every case each and every juror within four years of a felony conviction becoming final, even with no suggestion of jury misconduct, or risk possible dismissal of a future habeas claim. This would place a heavy burden not only upon counsel, but also upon jurors, who would be questioned about such matters and perhaps harassed, even without any indication that they had

engaged in improper conduct.

The record in this case shows that Watkins has alleged sufficient facts to survive a motion to dismiss. Taking Watkins' allegations as true, we conclude that Watkins has made a sufficient showing at this stage that he could not have discovered the facts underlying his jury misconduct claim at an earlier time through the exercise of due or reasonable diligence. The habeas court therefore erred in dismissing this claim.

2. Watkins' second claim involves the trial testimony of the victim's father that he discovered a dead dog in the vicinity of the victim's grave, with some indication that the dog had earlier been placed on the grave itself. Upon examining the dog more closely, the victim's father discovered that it had been shot between the eyes. He reported the discovery to police investigators, who sent the dog's remains to the GBI crime lab for analysis.

At trial, the State sought to introduce through a state crime lab manager an x-ray that was taken of the dog's head. The manager testified that no report had been prepared, but that he and a

pathologist, who had since left the crime lab and moved to Pennsylvania, had examined the remains and taken an x-ray. At that point, Watkins' trial counsel objected because the State had not disclosed the existence of the x-ray. See generally OCGA § 17-16-4 (a). During the subsequent bench conference, the trial court asked the prosecutor, "Was a bullet recovered?" and the prosecutor replied, "No, sir." The prosecutor added that the bullet had not been removed or examined, and that she did not "know what kind of bullet it is." The trial court refused to admit the x-ray, but allowed the witness to testify that he had observed a gunshot wound in the dog's head.

The prosecutor emphasized the dead dog in her closing argument, contending that Watkins shot the dog and left it on the victim's grave as a "calling card" or "signature" of his crime:

> He couldn't stand it. He wanted somebody to tell them that he saw it happen. I will tell you why else I can say that? Because of the dog that was left on Isaac's grave . . . . [T]hey carry it to the crime lab and what was — what had happened to that dog? Executed. Shot right between the eyes and laid on the grave of Isaac Dawkins. A signature. A signature. A calling card. He couldn't stand it. He didn't want to get caught. He didn't want to incriminate himself, but he sure wanted that family to

know that he did this. What kind of hatred does that take? What kind of mind does that take?

Watkins attached to his petition and incorporated by reference the affidavits of his trial and appellate counsel regarding their lack of knowledge of ballistics evidence or tests performed with regard to the dead dog. In addition, Watkins tendered at the hearing on the motion to dismiss the affidavit of a special agent with the GBI, listing in detail the Open Records Act[5] requests made on Watkins' behalf. Beginning in 2014, the Georgia Innocence Project filed repeated Open Records Act requests, including some seeking information about the dead dog. The agent and her colleagues were unable to locate any information, but an attorney for the Georgia Innocence Project eventually located the former GBI pathologist — not in Pennsylvania, but in Alabama — and obtained the correct case number from the pathologist's personal autopsy log. That case number was not linked to the other GBI case numbers assigned to Watkins' case. The records and exhibits under this new case

_____

[5] See OCGA § 50-18-70 et seq.

number, including a brief report and narrative, were eventually provided to the Georgia Innocence Project in May 2016, and showed that the bullet removed from the dog was a different caliber than that recovered from the victim's body, a circumstance that Watkins characterizes as exculpatory.

Watkins contends that the State's failure to comply with its constitutional duty to disclose this exculpatory evidence prevented Watkins from making "what would have been the strongest objection to the relevance and admissibility of the highly prejudicial dog evidence."[6] Watkins further contends that his counsels' repeated attempts to obtain documents through the Open Records Act over a period of several years constituted due diligence within the meaning of OCGA § 9-14-42 (c) (4), and that this claim could not reasonably have been raised in his original petition under OCGA § 9-14-51.

The habeas court found that Watkins could have discovered

---

[6] Watkins further asserts that both the prosecutor and the witness *knowingly* made false statements to the trial court, on the basis that the GBI's chain of custody report for the extracted bullet, produced under the new case number, included the district attorney's office. This, Watkins argues, shows that the State actively prevented him from discovering exculpatory evidence.

these facts under the Open Records Act in 2003, because the files were "available for public inspection" pursuant to statute on or about August 17, 2003, when Watkins' convictions became "final." Watkins, however, has alleged repeated Open Records Act requests, which were unsuccessful for a period of years not because of any lack of diligence on his part, but because the information concerning this claim was misfiled and not linked to other documents concerning Watkins' case.

Moreover, with regard to the dog, we must also consider the State's apparent failure to disclose this evidence to Watkins. As we observed in *Turpin,* in the context of the cause-and-prejudice test under OCGA § 9-14-48 (d), while "we are not willing to conclude[] that the State's concealment of the factual basis of a claim will always constitute cause[,] . . . it is a significant factor to be considered in the cause equation." 268 Ga. at 827 (2) (a). Similarly, in analyzing whether a petitioner has exercised due diligence within the meaning of OCGA § 9-14-42 (c) (4), the apparent failure of the State to provide the relevant evidence despite multiple Open

Records Act requests is significant.

> The State's duty to disclose exculpatory evidence applies to every part of the State that is involved in the prosecution, which, of course, would include the police department in [this] case. Given the fact that the State bore this duty of disclosure and given the absence of any reason to believe trial counsel should have been aware of the [evidence], the failure of trial counsel to discover the undisclosed [evidence] should not be ascribed to a lack of reasonable diligence.

(Citation omitted.) *Whatley v. Terry*, 284 Ga. 555, 559 (II) (B) (1) (668 SE2d 651) (2008) (concluding that petitioner had shown "cause" in the cause-and-prejudice test for procedural default under OCGA § 9-14-48 (d)). And in *Smith*, 250 Ga. at 652 (3), this Court considered whether the State's failure to correct the false testimony of a witness could "reasonably have been raised in the original [habeas] petition." OCGA § 9-14-51. Noting that the State had not challenged the merits of the claim but relied upon waiver and failure of the petitioner to exercise due diligence, we concluded that the petitioner had satisfied the requirement of showing grounds for relief that could not reasonably have been raised in his original petition, observing:

> The defendant has a right to rely on the accuracy of the trial testimony of the state's witness where the truth or falsity of his testimony is peculiarly within the knowledge of the state and the state is under a duty to reveal false testimony. Thus, we find unpersuasive the state's argument that the defendant should have discovered the state's breach of duty.

Id. at 651-652 (3).

Here, Watkins has alleged that the State failed to disclose exculpatory evidence in its files, which this Court has considered a "significant factor." In addition, only repeated and persistent requests under the Open Records Act over a period of years eventually revealed the missing evidence. Finally, diligence does not require that defendants submit multiple, wide-ranging Open Records Act requests to every State actor or agency that might possess records pertinent to their cases in order to determine whether the State lived up to its disclosure obligations. Watkins' petition, with its attached affidavits incorporated by reference and the additional affidavit from the GBI agent, outlining the extraordinary effort required here and the State's apparent failure to disclose, sufficiently alleges that Watkins, in the exercise of

reasonable diligence, could not have acquired the material at an earlier date. See id.

Here Watkins has alleged, sufficiently to survive a motion to dismiss, that the facts upon which he bases his claims could not have been discovered earlier through the exercise of due diligence and could not reasonably have been raised in his original petition. He was not obligated in the exercise of due diligence to assume that the State was concealing or neglecting to produce evidence which the crime lab manager and the prosecutor represented did not exist, nor was he required to request at some earlier time material which the State should have disclosed in the first instance. The habeas court therefore erred in concluding that, through the exercise of due diligence, Watkins could have discovered these facts under the Open Records Act in 2003.

In conclusion, we hold that Watkins has alleged facts showing grounds for relief which could not reasonably have been raised in his original habeas petition and which could not have been discovered by the reasonable exercise of due diligence. This is sufficient to

satisfy the requirements of OCGA §§ 9-14-42 (c) (4) and 9-14-51, to withstand a motion to dismiss, and to entitle him at least to an evidentiary hearing on these allegations.[7] We therefore reverse the habeas court's dismissal of Watkins' petition and remand this case for further proceedings.

*Judgment reversed and case remanded. Melton, C. J., Nahmias, P. J., and Blackwell, Peterson, Warren, Bethel, and Ellington, JJ., concur.*

BLACKWELL, Justice, concurring.

---

[7] We express no opinion regarding any aspect of the merits of Watkins' claims.

I concur fully in the opinion of the Court, which decides nothing about the merits of the claims that Joseph Watkins asserts in his second petition for a writ of habeas corpus. I write separately only to note that I have some doubt that the juror misconduct claim is a *constitutional* claim cognizable in habeas.

DECIDED MARCH 13, 2020 --- RECONSIDERATION DENIED MARCH 25, 2020.
Habeas corpus. Walker Superior Court. Before Judge Thompson.

*Benjamin D. Goldberg, Clare M. Gilbert, Adam D. McClay*, for appellant.

*Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.